J. ALFRED ANDERSON, administrator, *vs.* JAMES R. QUALEY.

Norfolk. March 27, 28, 1913.— October 31, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Executor and Administrator. Judgment. Name.*

The granting by the Probate Court of papers of administration upon a petition alleging the name of the intestate to have been Robert Eranen does not make the person named as administrator the administrator of the estate of one whose name was Tyko Robert Eronen and who also was commonly known as Tyko Eronen but who was not commonly known as Robert Eronen and is not shown to have been known as Robert Eranen; and it is immaterial that the person who filed the petition intended by the name Robert Eranen to designate a certain intestate whose name was Tyko Robert Eronen.

A decree of the Probate Court appointing an administrator of the estate of Robert Eranen is not attacked collaterally by showing that this decree had no effect as to granting administration upon the estate of Tyko Robert Eronen who never was known as Robert Eranen or Robert Eronen.

LORING, J. On September 4, 1908, Tyko Robert Eronen was injured while working for the defendant. On July 14, 1909, the plaintiff was appointed administrator of his estate and on August 25, 1909, brought this action to recover damages for conscious suffering and also, on behalf of the intestate's mother, who was dependent upon him for support, to recover for his death. To this the defendant pleaded (*inter alia*) a release dated July 1, 1909, given by one Spillane, who the defendant alleged was "duly appointed administrator of the estate of Robert Eronen, otherwise known as Tyko Robert Eronen." By a special replication the plaintiff (*inter alia*) denied that Spillane was " duly appointed administrator of the estate of Robert Eronen, otherwise known as Tyko Robert Eronen," and further alleged "that any release executed by said Spillane to the defendant was made and executed by reason of fraudulent collusion between said Spillane and the defendant."

At the trial it would seem that no requests for rulings were made by the plaintiff and no exception was taken to the charge of the

presiding judge.*  Two questions were submitted to the jury,
namely:

"1. Was Robert Eranen named in the letter of administration
to Maurice P. Spillane the same person as Tyko Robert Eronen
the plaintiff's intestate?  To which the jury answered, 'Yes.'
2. Was the plaintiff's intestate commonly known by the name
of Robert Eronen?  To which the jury answered, 'No.' "  On
these answers being made, the judge directed the jury to find a
verdict for the defendant.  To this ruling the plaintiff took the
exception, which is now before us.

It is not necessary to consider the plaintiff's contention that the
release pleaded by the defendant was obtained by collusion, for
we are of opinion that the judge was wrong in ruling (as he in
effect did rule) that as matter of law Spillane, who gave the
release, was the "duly appointed administrator of the estate of
Robert Eronen, otherwise known as Tyko Robert Eronen."

The evidence on the validity of Spillane's appointment as ad-
ministrator of the estate of the deceased was as follows:  He was
appointed administrator of the estate of "Robert Eranen."  "The
petition and letter of appointment" were introduced in evidence,
but no copy of them appears in the record before us.  Spillane
testified:  "I filed a petition for my appointment as administra-
tor of the estate of Robert Eronen, dated May 3, 1909, and was ap-
pointed June 2d, 1909.  The deceased's name was spelt R-o-b-e-r-t
E-r-a-n-e-n in the petition.  I obtained the name from the medical
examiner, Dr. Jones."  McKay, the attorney employed by Spil-
lane to bring suit for the accident which happened to the deceased,
testified:  "At some stage of the proceedings there was doubt
in my mind as to whether 'a' or 'o' in the name was correct.
Some pronounced it Eronen and some Eranen.  I did n't verify
it, but the pronunciation raised a suspicion in my mind that per-
haps you (meaning the plaintiff) have it right, and I endeavored to
ascertain the real fact and decided to leave it as I had it."  The
defendant also introduced in evidence "the record of deaths in the
city of Quincy, which gave the name as 'Robert Eronen.'  The
undertaker who furnished the information and the medical ex-
aminer testified that the name was secured from one 'Tiivonen,'

---

* *Stevens*, J.

who talked through an interpreter, and from the defendant. It appeared that the correct name of the informant was 'Iivonen,' who testified that he thought he had showed the passport [of the deceased] at that time." "On the question of the name of the deceased, the plaintiff introduced testimony of several Finnish friends, three of whom worked at the defendant's place of business at the time the deceased was injured, and all of them either roomed or boarded at the same place as the deceased. One witness had known the deceased from boyhood. These witnesses all testified that they were well acquainted with the deceased, that they had always known him as Tyko Eronen and had always heard him called by the name Tyko Eronen and had never heard him called Robert. A copy of the birth certificate showed his full name to be Tyko Robert Eronen. Iivonen, the witness already referred to, testified that on the deceased's passport was the name Tyko Robert Eronen. In certain interrogatories filed by the plaintiff to the defendant, and answered under oath by the defendant, the defendant was asked 'Was one Tyko Robert Eronen employed by you or by the partnership or corporation with which you were connected on or about September 4, 1908?' to which the defendant answered 'Yes;' and in answer to other interrogatories the defendant stated that 'said Eronen' was injured on September 4, 1908, from the effects of which injury he died the following day. The record at the Quincy Hospital showed on September 4 the name of 'Toki Aronen, 74 Arthur Street,' which was the deceased's address at the time of his death." And "the plaintiff and another witness qualified as experts on the Finnish language and testified that the name 'Eranen' would not be a Finnish name because of the presence of the letter 'a' in the way it appeared in 'Eranen,' and that it would not be recognized as a Finnish name by a Finn."

It is stated in the bill of exceptions that it contains all the material evidence bearing on the exceptions.

When a writ is served on the person intended and there is a mistake in his name, the mistake is not fatal if the defendant does not plead the misnomer in abatement. Such are the cases of *Trull* v. *Howland,* 10 Cush. 109; *Root* v. *Fellowes,* 6 Cush. 29; *Sanford* v. *Hodges,* 11 Gray, 485, relied on by the defendant. But in other cases the rule is different. Where service of a writ nam-

.ing S. F. Leonard as defendant was made by leaving a copy at the last and usual place of abode of Leonard Salentine, the person intended to be sued, it was held that an action on a judgment rendered on default could not be maintained against Leonard Salentine. *Fitzgerald* v. *Salentine*, 10 Met. 436. It was held in *Parker* v. *Parker*, 146 Mass. 320, that the deposition of E. T. Shepard taken on interrogatories addressed to, and under a commission to take the deposition of E. S. Shepard, could not be read at the trial although it was intended to take the deposition of E. T. Shepard and E. T. Shepard was the person whose deposition was taken. In *Slasson* v. *Brown*, 20 Pick. 436, it was held that a notice of intention to take the poor debtor's oath addressed to Ebenezer B. Slasson when it should have been addressed to Edward B. Slasson, was not good although served on Edward's attorney as Edward's attorney and although it was proved that Edward B. Slasson was the only client the attorney had by the name of Slasson. In *Commonwealth* v. *Hall*, 3 Pick. 262, it was held that Charles Jones Hall could not be fined for neglecting to appear at a meeting of a militia company in which Charles Hall was enrolled as the member in question. In *Commonwealth* v. *Shearman*, 11 Cush. 546, it was held that a charge of illegally selling intoxicating liquor to George E. Allen was not sustained by proof of a sale to George Allen; and in *Commonwealth* v. *Buckley*, 145 Mass. 181, it was held that threatening to accuse Frank E. White of a crime is not sustained by proof that the defendant threatened to accuse Frank A. White of a crime. A collection of similar decisions may be found in *Commonwealth* v. *Stone*, 152 Mass. 498.

In case of a petition for administration on the estate of a deceased person, there is no ascertainment of the deceased person intended beyond the name stated in the petition. The petition is a proceeding in the nature of, if not strictly, a proceeding *in rem*. The *res* is the estate of the deceased, and the only identification of the *res* is the name of the deceased set forth in the petition. It is on the allegation contained in the petition as to the name of the deceased that the persons are named who are to be notified in the notice, the form of which (adopted by the Probate Court and approved by this court on May 19, 1893, under St. 1893, c. 372, now R. L. c. 163, § 6, and c. 162, § 29) begins with these words: "To

the heirs at law, next of kin, creditors and all other persons interested in the estate of ——." In a petition for administration, where *ex vi termini* there can be nothing by way of personal service and the identity of the intestate depends solely upon the name given him in the petition, the true *res* is ascertained if the name of the intestate is stated correctly in the petition. Or if the name of the intestate there stated is a name by which he was commonly known (for a collection of cases on this point see *Young* v. *Jewell*, 201 Mass. 385), the true *res* is ascertained. Or finally, if the name of the intestate there stated is *idem sonans* with his true name the true *res* is ascertained.

In the case at bar the true name of the deceased was Tyko Robert Eronen. There was abundant evidence that he was also commonly known by the name of Tyko Eronen. There was no evidence that he was commonly known as Robert Eranen. It was found by the jury that he was not commonly known by the name of Robert Eronen. If the jury had found that the deceased was commonly known by the name of Robert Eronen, the question would have arisen whether Robert Eranen is *idem sonans* with Robert Eronen. In view of the testimony of the experts on the Finnish language "that the name Eranen would not be a Finnish name," that "it would not be recognized as a Finnish name by a Finn," and of the testimony of Spillane's attorney McKay that "some pronounced it Eronen and some Eranen," it could not have been ruled as matter of law that Eronen and Eranen are *idem sonans*, if indeed that could have been found as a fact by the jury. For the rule as to *idem sonans* see Gardner, J., in *Commonwealth* v. *Warren*, 143 Mass. 568, 569. But in this case the question of *idem sonans* did not arise because, as we have said, the jury found that the deceased was not commonly known as Robert Eronen.

The deceased was named Tyko Robert Eronen; there was evidence that he was also commonly known as Tyko Eronen, and it was found that he was not commonly known as Robert Eronen. Under these circumstances we are of opinion that administration granted on a petition in which the name of the deceased is alleged to have been Robert Eranen cannot as matter of law be held to have been granted on the estate of the deceased.

It is not plain just what the presiding judge had in mind in sub-

mitting to the jury the first question submitted to them, namely, "Was Robert Eranen named in the letter of administration to Maurice P. Spillane the same person as Tyko Robert Eronen the plaintiff's intestate?" From what has been said already that is not the question, nor is it one of the questions on which the issue, whether Spillane was or was not appointed administrator of the estate of the deceased, depends. All that the jury's answer to that question can be taken to mean is that Robert Eranen and Tyko Robert Eronen were not different persons. That is to say, that the same person was intended in both petitions. But when letters of administration are granted to J. S. upon the estate of Henry Jones he does not thereby become the administrator of the estate of John Smith because that was what he intended when he filed his petition to be appointed administrator and by mistake asked to be appointed administrator of the estate of Henry Jones.

The defendant's last contention is that, if it is held in this action that Spillane is not the duly appointed administrator of the estate of Tyko Robert Eronen, the decree of the Probate Court is collaterally attacked. That is not so. The Probate Court after notice "to the heirs at law, next of kin, creditors, and all other persons interested in the estate of Robert Eranen" decided that Robert Eranen died intestate and that letters of administration on his estate should be issued to Spillane. The Probate Court did not decide that Tyko Robert Eronen, also commonly known as Tyko Eronen, died intestate and that letters of administration on his estate should be issued to Spillane. Nor did the Probate Court decide that Robert Eranen was Tyko Robert Eronen, commonly known as Tyko Eronen. To hold that the decree issuing to Spillane letters of administration on the estate of Robert Eranen does not make him the duly appointed administrator of the estate of Tyko Robert Eronen, also commonly called Tyko Eronen, is not to attack that decree but to hold that it does not apply to the estate of the latter person, Tyko Robert Eronen, also commonly known as Tyko Eronen.

The entry must be

*Exceptions sustained.*

*O. Storer,* (*J. A. Anderson* with him,) for the plaintiff.
*W. H. Hitchcock,* for the defendant.