## COMMONWEALTH *vs.* JESSE W. SNOW.

Franklin.   September 18, 1929. — January 6, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON,
& FIELD, JJ.

*Extortion.   Pleading, Criminal,* Indictment.   *Practice, Criminal,* Amendment, Variance.   *Grand Jury.   Constitutional Law.*

An indictment charged that the defendant "did by a written communication maliciously threaten . . . [a woman of a specified name containing no middle initial] to do an injury to the person and property of said . . . [woman] with intent thereby to extort money from the said . . . [woman]." The evidence at the trial of the indictment showed that the threat was made to a woman of the same name except that it contained a middle initial. It was conceded that the woman specified in the indictment and the woman named in the evidence were the same person. The trial judge denied a motion by the defendant that the jury be ordered to return a verdict of not guilty on the ground of a variance. *Held,* that
> (1) There was in the indictment merely an immaterial misnomer of a third party within the provisions of G. L. c. 277, § 35;
> (2) The defendant's motion properly was denied.

It *was stated* that the words of G. L. c. 265, § 25, "Whoever, verbally or by a written or printed communication, . . . maliciously threatens an injury to the person or property of another, with intent thereby to extort money or any pecuniary advantage, . . . shall be punished," do not require that the person threatened, the person to be injured and the person from whom money is sought to be extorted be the same person: the offence specified by those words is established by proof merely of the making of a threat of the character described with intent to extort.

It *was stated* that the indictment above described was sufficient in form and charged a crime under G. L. c. 265, § 25.

The crime specified by the indictment above described was a felony and could be prosecuted only upon an indictment.

An indictment cannot be amended as to a matter of substance; and therefore St. 1926, c. 227, adding § 35A to G. L. c. 277, must be construed as authorizing amendments to indictments as to matters of form only.

So construed, said § 35A is constitutional.

It *was stated* that, although the name of the person threatened must be specified in an indictment under G. L. c. 265, § 25, it is not necessary to specify therein the name of the person against whom injury is threatened: the wording of the statute may be followed and that person described as "another."

There was evidence at the trial of the indictment above described that the defendant in writing threatened the woman that her child would

be "grabbed" and kidnapped and her place destroyed unless she paid a certain sum of money. At the close of the evidence, the issue was limited by the trial judge, without objection by the defendant, to a threat against the person of the child with intent to extort money from the woman, the threat to injure the woman's person and property being eliminated. The case thereupon was argued to the jury upon the issue as so limited. After the judge had commenced his charge to the jury, the district attorney presented a motion to amend the indictment in such a manner as to charge the defendant with having threatened the woman to injure the person of her child with intent to extort money from her. The defendant being unable to point out any way in which he could be prejudiced by the allowance of the amendment, and he declining to offer any further evidence or argument, the amendment was allowed subject to his exception. The jury returned a verdict of guilty. *Held,* that

(1) Although the indictment need not have specified the identity of the person against whom injury had been threatened, the grand jury, presumably having had before them evidence to show a threatened injury to both the woman and the child and having specified in the indictment only the woman as the person threatened to be injured, apparently intended to limit the charge in that respect;

(2) The amendment, which inserted in the indictment a charge of threatened injury to another person apparently not intended by the grand jury to be named, therefore wrought a change of substance and was not authorized by G. L. c. 277, § 35A;

(3) The allowance of the amendment was erroneous and the defendant's exception must be sustained.

INDICTMENT, found and returned on July 9, 1929.

The indictment, and proceedings and material evidence at the trial in the Superior Court before *Lummus,* J., are described in the opinion. The defendant was found guilty and alleged exceptions.

The case was argued at the bar in September, 1929, before *Rugg,* C.J., *Pierce, Wait, Sanderson,* & *Field,* JJ., and afterwards was submitted on briefs to all the Justices.

*H. J. Field,* for the defendant.

*C. Fairhurst,* District Attorney, for the Commonwealth.

RUGG, C.J. This indictment charged that the defendant at a specified time and place "did by a written communication maliciously threaten Nora Downs to do an injury to the person and property of said Nora Downs with intent thereby to extort money from the said Nora Downs." There was evidence tending to show that the defendant secretly and anonymously caused a written communication to be made to

Nora C. Downs, whereby a threat was made to her in effect that her child would be "grabbed" and kidnapped and her place destroyed if she did not put $500 in cash near a designated tree at a stated hour, and that for that sum "cash you and the kid will be let alone. If you fail to pay or tell any one watch out," together with other ancillary threats. The communication was signed "Greenfield Mafia" and by a drawing of a "black hand." It was conceded that the Nora Downs named in the indictment is the same person as the Nora C. Downs to whom the communication was made, and that Beulah C. Downs, her minor daughter, is the child referred to in that communication. The defendant offered no evidence. He made a motion for a directed verdict in his favor, (1) because of variance between the name Nora Downs in the indictment and the name Nora C. Downs shown by the evidence, and (2) because under G. L. c. 265, § 25, it is not a crime maliciously to threaten one person with injury to another with intent to extort money from the person threatened. Another ground stated in the motion is not now argued and is treated as waived. This motion was overruled and the defendant excepted.

At the common law and under our earlier decisions the variance between the name Nora Downs as charged and the name Nora C. Downs as proved would have been fatal. The middle name or initial is part of the name. *Commonwealth v. McAvoy*, 16 Gray, 235. *Anderson* v. *Qualey*, 216 Mass. 106, 109, and cases cited. It was held in *Commonwealth* v. *Buckley*, 145 Mass. 181, that the "name of the person threatened is necessary to the identity of the offence charged in the indictment, and therefore must be proved as set forth." Subsequent to these decisions it was enacted that a "defendant shall not be acquitted . . . by reason of an immaterial misnomer of a third party. . . ." G. L. c. 277, § 35, reënacting the substance of St. 1899, c. 409, § 4. This "statute is designed to avoid the possibility of reversible error, not going to the merits of the accusation, where in fact the defendant does not suffer prejudice. Senate Doc. of 1899, No. 234. . . . The statute is remedial and should be construed with reasonable liberality and so as to give effect to

all its provisions. The defendant is safeguarded by his right to a bill of particulars and the power and obligation of the judge to see that he suffers no actual harm." *Commonwealth v. Cabot,* 241 Mass. 131, 144. Under this statute the requirement of exact correspondence between the allegation in the indictment and the proof at the trial of the name of a third person is relaxed. The defendant is still protected against material misnomers of third persons. It is sufficient now that the defendant was informed of the charge and suffered no harm in his defence, if enough appears to protect him against another prosecution for the same offence. See *Bennett v. United States,* 227 U. S. 333, 338; *Commonwealth v. Bannon,* 254 Mass. 320; *Commonwealth v. Baxter,* 267 Mass. 591, 594. *Bartkus v. United States,* 21 Fed. Rep. (2d) (C. C. A.) 425, 427. *King v. United States,* 25 Fed. Rep. (2d) (C. C. A.) 242, 245. *Harris v. People,* 64 N. Y. 148, 154. The case at bar, in view of all the circumstances, falls within the terms of the statute and the defendant was not entitled to an acquittal because of variance.

The statute under which the defendant was indicted consists of a single sentence of G. L. c. 265, and is in these words, so far as here pertinent:

"Section 25. Whoever, verbally or by a written or printed communication, maliciously threatens to accuse another of a crime or offence, or by such communication maliciously threatens an injury to the person or property of another, with intent thereby to extort money or any pecuniary advantage, or with intent to compel the person so threatened to do any act against his will, shall be punished. . . ."

It is to be observed that the part of this section ending with the word "another," being the third word in line 4, governs all that follows, and that the rest of the section falls into two parts; the first part ending with the word "advantage" in line 5, and the second part beginning with the word "or" in line 5 and ending with the word "will" in line 6. All that follows deals solely with the punishment. This first part contains no express or implied limitation as to the person to whom the threat is made, or as to the person from whom it is intended to extort money or other pecuniary advantage.

According to the natural meaning and the grammatical construction of this part of the section, the threat may be made to anybody — the person to be accused or injured, the person from whom it is intended to extort the money or other pecuniary advantage, or a different person. That part of the section is couched in the broadest terms. The only requirement for the establishment of the crime thereby created is that the specified threat be made with the intent to extort. Proof of those facts substantiates the offence. The one making the threat need not even have a definite person in mind as the person from whom the money or other pecuniary advantage may be extorted. That part of the statute would be satisfied by intent to extort the money or pecuniary advantage from anybody. A threat made to A to accuse B or to do injury to C, with intent to extort money or other pecuniary advantage from X, would fall within the phrase of the statute. The generality of the first part of the section is brought into clear relief and emphasized by contrast with the explicitness in its second part, where the crime is described as being committed by making the threat "with intent to compel the person so threatened" to do an act. There the person "so threatened" is specified as the only person with respect to whom the crime is committed. The crime thus set forth could be proved only by evidence of a threat to A with intent to compel A to act. In the one case the intent to extort is defined in words of wide import; in the other it is narrowly confined. The restriction of the second part cannot rightly be stretched backward to constrict the broad language previously used. The structure of the section as a whole confirms this interpretation. The punctuation of the section, so far as an aid to its construction, tends in the same direction. *Dowling* v. *Board of Assessors,* 268 Mass. 480, 488.

The defendant's motion for a directed verdict on this branch of the case was denied rightly.

This conclusion is more or less directly supported by authority. *Commonwealth* v. *Coolidge,* 128 Mass. 55, 57. *Commonwealth* v. *Corcoran,* 252 Mass. 465, 483. *People* v. *Thompson,* 97 N. Y. 313.

At the close of the evidence the judge without objection on the part of the defendant stated his intention to submit the case to the jury upon the threat against the person of the child, Beulah C. Downs, only, with intent thereby to extort money from Nora C. Downs and to eliminate from the case consideration of a threat to injure property. The case was then argued to the jury upon the issue thus stated, without objection by the defendant. The difference between the issue thus stated and the charge as laid in the indictment was not expressly brought to the attention of the judge. After the judge began to give his final instructions to the jury, it was discovered that the indictment set forth a threat to do an injury to the person of Nora Downs and not a threat to do an injury to the person of Beulah C. Downs. The district attorney then moved to amend the indictment (already quoted) by striking out the words "and property of said Nora Downs" and by inserting in place thereof the words "of Beulah C. Downs, a minor child of said Nora Downs." Thus the indictment, if the motion to amend were granted, would charge the defendant with having threatened Nora Downs to do an injury to the person of her child Beulah with the intent to extort money from Nora Downs. There was a hearing forthwith on the motion to amend. The judge "called the attention of counsel for the defendant to the issue which had already been argued to the jury and to the identity of that issue with the issue raised by the indictment as proposed to be amended, asked counsel for the defendant to point out any way in which the defendant would be 'prejudiced in his defence by the allowance of the motion, and offered to give the defendant, if the motion should be allowed, opportunity to present further evidence or make further argument as he might desire. Counsel for the defendant answered that he was unable at that time to point out any way in which the defendant would be prejudiced in his defence by the allowance of said amendment and declined to introduce any further evidence or make any further argument but protested against being asked to point out any way in which the defendant might be prejudiced in his defence and objected to the allowance of said amend-

ment." Thereupon the amendment was allowed, subject to the exception of the defendant, and the charge to the jury was resumed and completed. A verdict of guilty was returned.

It is plain that the indictment as amended set out an offence differing in one respect from that set out in the indictment as returned by the grand jury. The indictment as originally drawn charged the defendant with threatening to do injury to the person and property of Nora Downs with intent to extort money from her. That indictment was sufficient in form and charged a crime under G. L. c. 265, § 25. The indictment as amended charged the defendant with threatening Nora Downs to do injury to her child Beulah with intent to extort money from Nora Downs. The person to be injured, named in the indictment, was different from the person to be injured, named in the indictment as amended.

It is sought to justify the allowance of the amendment by St. 1926, c. 227, whereby § 35A was added after § 35 to G. L. c. 277. Its words are: "Upon motion of the district attorney or prosecuting officer, the court may order the complaint or indictment amended in relation to allegations or particulars as to which the defendant would not be prejudiced in his defence."

The indictment as originally returned charged a felony and an infamous crime, the maximum punishment being a term in the State prison not exceeding fifteen years. It charged a crime for which in this Commonwealth the defendant could be prosecuted only upon an indictment by the grand jury. *Jones* v. *Robbins*, 8 Gray, 329. *Commonwealth* v. *Horregan*, 127 Mass. 450. *Commonwealth* v. *Harris*, 231 Mass. 584, 585. *Opinion of the Justices*, 232 Mass. 601, 602. The question presented for decision, therefore, is whether under the Constitution an indictment can be amended by a district attorney in the particular here disclosed. That question did not require decision in *Commonwealth* v. *Cooper*, 264 Mass. 378, where it was held that the amendment there attempted to be made was outside the scope of St. 1926, c. 227. It did not arise in *Commonwealth* v. *Gedzium*, 259 Mass. 453.

Plainly, in the absence of an enabling statute, an indictment cannot be amended. *Commonwealth* v. *Phillipsburg,* 10 Mass. 78. *Commonwealth* v. *Child,* 13 Pick. 198. *Commonwealth* v. *Maher,* 16 Pick. 120. *Commonwealth* v. *Drew,* 3 Cush. 279. *Ex parte Bain,* 121 U. S. 1. The soundness and binding force of *Ex parte Bain* on this point have been recognized in more recent decisions, although the precise question does not appear to have arisen again in the Supreme Court of the United States. *Goto* v. *Lane,* 265 U. S. 393, 402. *Ford* v. *United States,* 273 U. S. 593, 602. *Albrecht* v. *United States,* 273 U. S. 1, 8. *Salinger* v. *United States,* 272 U. S. 542, 549. It has been followed by other Federal courts in late decisions. *Armstrong* v. *United States,* 16 Fed. Rep. (2d) (C. C. A.) 62, 64. *Stewart* v. *District Court,* 16 Fed. Rep. (2d) (C. C. A.) 863. *Garrett* v. *United States,* 17 Fed. Rep. (2d) (C. C. A.) 479, 480. *Dodge* v. *United States,* 169 C. C. A. 316.

Since the classic opinion by Chief Justice Shaw in *Jones* v. *Robbins,* 8 Gray, 329, it is vain to question or to attempt to impair the integrity of the main principles of the grand jury as established under art. 12 of the Declaration of Rights of our Constitution. Efforts in that direction have invariably failed. Nevertheless, the rigors of criminal pleading at common law have been much relaxed by statutes which have been upheld as not in contravention of the Constitution. See St. 1899, c. 409, now in G. L. c. 277, in various sections. *Commonwealth* v. *Snell,* 189 Mass. 12, 19. *Commonwealth* v. *Jordan,* 207 Mass. 259. *Commonwealth* v. *Wakelin,* 230 Mass. 567, 570. It was held in 1855 that an amendment might be made to an indictment under an enabling statute by setting out a former conviction of a similar offence to which no reference was made in the indictment as returned. *Commonwealth* v. *Holley,* 3 Gray, 458. In *Commonwealth* v. *Gedzium,* 259 Mass. 453, the constitutionality of G. L. c. 277, § 19, was assailed, whereby it was enacted that the defendant might be described in an indictment by a fictitious name when his name was unknown to the grand jury, and that later his true name, if discovered, might be entered of record and used in subsequent proceedings. In the discussion of

the questions there raised are reviewed numerous cases concerning the constitutional characteristics of the grand jury with extended quotations from various opinions. That ground need not be traversed again. The grand jury in its fundamental and essential features, with all their necessary implications as existing at the time of the adoption of the Constitution, must be sedulously preserved. That is the mandate of the Constitution, to which all must bow. Regulation of the mode of procedure under indictments may be made by legislation provided always that the substance of the constitutional rights secured under the grand jury system is not impaired. Unessential formalities of that system may be modified from time to time to meet the changing needs of the general welfare. See *Bothwell* v. *Boston Elevated Railway*, 215 Mass. 467.

The meaning and validity of § 35A, already quoted, are to be determined in the light of this background. It is plain from the discussion in *Jones* v. *Robbins*, 8 Gray, 329, that an amendment to an indictment as to a matter of substance would not be permissible. That would impair the integrity of the functions of the grand jury as established by the Constitution. Every presumption is indulged in favor of the validity of a statute and of the intent of the legislative department of government not to step outside constitutional bounds. It follows that § 35A must be interpreted as authorizing amendments to indictments only as to matters of form and not as to matters of substance. The district attorney rightly concedes this in his argument. This limitation may also be implied from the words of the statute to the effect that no amendment can be made which would prejudice the defendant in his defence.

Construing § 35A as authorizing amendments only with respect to matters of form and those not essential to the description of the crime charged, we are of opinion that it does not contravene the provisions of the Constitution. It cannot be thought that the grand jury intended to make mere matters of form, and matters not necessary to the description of the crime charged, the basis of its action in finding a true bill and in presenting an indictment. It must

be presumed that the members of the grand jury, as men of sound judgment carefully selected from the body of the county and acting under the sanction of their official oaths, have taken their votes with a view to the underlying fundamentals of the evidence heard by them and not to its superficial features. If something more than these underlying fundamentals creeps into the formal charge embodied in the indictment, it would be reasonable to impute such additions to inadvertence and not to a misunderstanding of the main purpose expressed. It is within the broad powers conferred by the Constitution, c. 1, § 1, art. 4, to establish all manner of wholesome and reasonable laws for the good and welfare of the Commonwealth, for the General Court to declare that nonessentials may be cut out of or changed in an indictment on motion to amend made by the prosecuting officer approved by order of the court, and that such law is not repugnant or contrary to the other provisions of the Constitution preserving the grand jury system. Such procedure falls within the principles declared by Chief Justice Shaw in *Commonwealth* v. *Holley*, 3 Gray, 458. This conclusion is in accord with the weight of authority in other States having constitutional provisions not widely dissimilar to our own, where legislation allowing amendments to indictments as to immaterial matters, but not as to substance, has been upheld. *State* v. *Kelley*, 66 N. H. 577. *State* v. *Startup*, 10 Vroom, 423, 430–432. *State* v. *Johnston*, 91 N. J. Law, 611. *People* v. *Van Every*, 222 N. Y. 74. *People* v. *Geyer*, 196 N. Y. 364. See cases collected in 7 Am. L. R. 1516, note, and in 31 C. J. 825, § 417.

It remains to determine whether the amendment and the circumstances under which it was presented and allowed bring the case at bar within the terms of § 35A.

Although the name of the person threatened is necessary to the identity of the offence under G. L. c. 265, § 25, when the person against whom injury is threatened is different from the person threatened, allegation of the name of the person to be injured is not in our opinion essential to the validity of the indictment. It would be enough in this respect if the charge as laid in the indictment follows the

words of the statute. *Commonwealth* v. *Beaulieu*, 213 Mass. 138, 141. *Commonwealth* v. *Allison*, 227 Mass. 57. *Commonwealth* v. *Dyer*, 243 Mass. 472, 491. *Commonwealth* v. *Pentz*, 247 Mass. 500, 505. *Commonwealth* v. *Littleton*, 260 Mass. 423, 425. In those conditions the rights of a defendant would be completely protected by the right to demand a bill of particulars under G. L. c. 277, § 40. *Commonwealth* v. *Snell*, 189 Mass. 12, 19. *Commonwealth* v. *Jordan*, 207 Mass. 259, 267. *Commonwealth* v. *Farmer*, 218 Mass. 507, 509, and cases cited. Therefore, if the indictment in the case at bar had simply named the person to whom the threat was made and had described the one against whom the personal injury was threatened as "the person of another," thus following the very words of the statute, it would have been adequate and could not rightly have been quashed. The defendant, if he had desired, would then have been entitled as of right to a bill of particulars giving the name of such person. The essence of the offence as charged in the indictment was the malicious threat made to Nora Downs with intent to extort money from her through exciting fear in her of personal injury to some one. Four factors constitute the crime set forth in said § 25: (1) a malicious threat (2) made to a named person (3) of personal injury to some one (4) with intent to extort money. See *Commonwealth* v. *King*, 9 Cush. 284, 287; *Commonwealth* v. *Reynolds*, 14 Gray, 87, 89, 90. Superfluous averments ordinarily may be rejected as surplusage. *Commonwealth* v. *Keefe*, 7 Gray, 332. *Commonwealth* v. *Markarian*, 250 Mass. 211. *Commonwealth* v. *Baxter*, 267 Mass. 591, 594. Allegations not essential to the crime formerly required to be proved, *Commonwealth* v. *Stone*, 152 Mass. 498, now may be disregarded under statutes. *Commonwealth* v. *Frishman*, 235 Mass. 449, 455. *Commonwealth* v. *Barney*, 258 Mass. 609. The prosecuting officer has extensive powers to enter a *nolle prosequi* as to parts of the indictment and thus to reduce the magnitude of the offence charged. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 572, 573. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 17–19.

In the case at bar the grand jury saw fit by the indictment to specify the name of the person whose property and person were to be injured. The person thus specified was Nora Downs. The written communication to Nora Downs already summarized warranted the finding of a threat to injure her property. It also might have been thought by the grand jury to imply a threat of bodily injury to her as well as to her child by its general tenor and by the further words that upon payment of the money demanded in cash, "you and the kid will be let alone. If you fail to pay or tell any one watch out." At all events the grand jury specified the name of the one threatened to be injured both in person and property to be Nora Downs. The grand jury did not see fit to make that allegation in general words. Instead, they chose to make a specific allegation. Some allegation, either general or specific, was necessary on this point. Since there was evidence before the grand jury tending to support that specific allegation as set out in the indictment, it cannot be treated as a clerical error, or an inadvertence, or as intended to be wholly general. The situation is that the indictment was amended at the trial by striking out a part of it that was supported by the evidence of the threat in writing and by inserting in its place a charge of injury to another person not named in the indictment and apparently not intended by the grand jury to be named as the person against whom the injury was threatened. We say "not intended by the grand jury to be named" because the evidence in the form of the written communication containing the threat against that person presumably was before the grand jury and that person was not named, but some one else was named against whom also there was evidence before the grand jury in the same written communication. If the indictment had been left as it stood with the words stricken out, there would not have been enough left to constitute the crime. It was essential that something be inserted in place of what was stricken out. One test to determine whether the change made was material is whether judgment of conviction or acquittal on the indictment as drawn would be a bar to a

new indictment drawn in the form in which it stood after the amendment. We think it plain that conviction or acquittal on the indictment as drawn would not be a bar to a new indictment in the form to which it was changed by the amendment. *Commonwealth* v. *Wade,* 17 Pick. 395, 401. *Commonwealth* v. *Howe,* 132 Mass. 250, 258. It follows from these considerations that the change wrought in the indictment was one of substance and not of form. Therefore it was not authorized by the statute. There are authorities in other States having a contrary appearance. See, for example, *People* v. *Johnson,* 104 N. Y. 213; *Hawthorn* v. *State,* 56 Md. 530; *Rosenberger* v. *Commonwealth,* 118 Penn. St. 77; *Davis* v. *State,* 150 Miss. 797; *State* v. *Blaisdell,* 49 N. H. 81. It is not necessary to examine these decisions in detail nor to inquire whether they were rendered under constitutions which secure the essential elements of the grand jury in the same form and to the same extent as does the Constitution of this Commonwealth. The reasoning of *Jones* v. *Robbins,* 8 Gray, 329, and its interpretation of the provisions of our Constitution concerning the grand jury require a decision that the amendment of the indictment here allowed was not permissible. On this point it is necessary to hold that the ruling of the trial judge was erroneous.

*Exceptions sustained.*