The defendant was convicted by a Superior Court jury of three counts of statutory rape. The defendant appeals, claiming (1) that the trial judge abused his discretion in allowing the admission of certain "prior bad acts" evidence of contemporaneous uncharged conduct, (2) that the trial judge erred in allowing the Commonwealth to amend two counts of the indictment, and (3) that certain statements during the Commonwealth's closing argument were improper and thus require a new trial. We affirm.
1. Background. We recite the material facts as the jury reasonably could have found them, reserving some facts for later discussion.
a. Allegations. The victim testified that the defendant repeatedly touched her and digitally raped her during various periods from when she was age eight to age fourteen. The defendant was a friend of the victim's mother who, during the time period in question, would regularly sleep over at the victim's home in the Dorchester section of Boston. During this time, the defendant, the victim, and the mother would all sleep in the same bed.
In 2011, a Suffolk County grand jury indicted the defendant on three counts of rape of a child under the age of sixteen (statutory rape), in violation of G. L. c. 265, § 23, and three counts of indecent assault and battery on a child under the age of fourteen, in violation of G. L. c. 265, § 13B. The rape and the indecent assault counts were paired by time frame: that is, counts 1 and 4 alleged rape and indecent assault, respectively, in 2004-2005, when the victim was eight and nine; counts 2 and 5 alleged rape and indecent assault, respectively, in 2007-2008, when the victim was ten and eleven; and counts 3 and 6 alleged rape and indecent assault, respectively, in October and November of 2010, when the victim was thirteen.
Immediately prior to trial, the Commonwealth moved to amend counts 2 and 5 to extend the time period by two years, from "divers dates between 2007 and 2008," to "divers dates on about and between 2007 and September 2010." The judge allowed the motion, stating that the amendments were a matter of form rather than substance, and that there was no prejudice to the defendant in allowing the motion.
b. Motion in limine. Prior to trial, the Commonwealth moved to introduce evidence of uncharged, "contemporaneous bad acts" -- in particular, an occasion when the defendant had taken the victim to his home in Lowell, where the victim's mother was not present. The motion in limine set out that, on this occasion, the victim "woke up to the defendant between [her] legs and his mouth on her vagina." Following a hearing, the trial judge allowed the motion, relying on Commonwealth v. King, 387 Mass. 464, 469-473 (1982). The judge noted that the uncharged conduct was relevant to motive, opportunity, state of mind, intent, the relationship between the defendant and the victim, and the absence of mistake or accident. The judge indicated that he would provide a limiting instruction as to the permissible uses of the evidence.
c. Trial. The case was tried to a jury in the summer of 2014. In brief, the evidence, taken in the light most favorable to the Commonwealth, showed that the defendant had been involved with the victim's family since the victim was seven years old. The defendant, the victim, and the victim's mother would typically sleep together in the mother's bed. The victim testified to numerous incidents beginning when she was eight years old. On several occasions, the victim awoke in her mother's bed to find the defendant touching her vagina with his hand over or under her clothes, or squeezing her chest and buttocks under her clothing.
The victim told her mother about these incidents when she was eight, and thereafter the victim met with a social worker. The social worker testified at trial, and confirmed that the victim told her of the touchings in 2005. The social worker also testified that she spoke to the defendant in 2005 about the allegations. The defendant denied assaulting the victim, though the defendant indicated that the victim would sleep between him and the victim's mother in the mother's bed.
After a hiatus in 2006 while the mother was away at a program for alcohol use, the defendant resumed spending the night with the victim and her mother, and the assaults continued. The victim testified to various touchings of her private body parts while in the mother's home, including the defendant "touching ... the inner part" of her vagina with his fingers -- continuing until she was fourteen years old.
The victim also testified about the uncharged conduct that occurred at the defendant's home in Lowell: she testified that when she was ten years old, she visited the defendant's home alone, where he touched the victim "the same way as [in her] mother's bed." She testified that the defendant "touch[ed]" her vagina with his hand and also used his tongue to touch "[t]he inner part" of her vagina. Immediately following this testimony, the judge gave a limiting instruction, to which there was no objection.
d. Verdict. The defendant was found guilty on all three counts of statutory rape, and acquitted of the three counts of indecent assault and battery (relating to touching the victim's breasts).
2. Discussion. a. Evidence of uncharged conduct. On appeal, the defendant raises three issues. The defendant first argues that the trial judge abused his discretion by allowing the evidence of uncharged conduct that occurred at the defendant's home in Lowell, because the evidence was overwhelmingly suggestive of the defendant's propensity for criminal conduct and distracted the jury from the actual charged crimes. We review a judge's decision to admit evidence for abuse of discretion and, if there was error, whether that error prejudiced the defendant. Commonwealth v. Carey, 463 Mass. 378, 388, 392 (2012) ("We entrust questions of relevancy and prejudicial effect to the sound discretion of the trial judge, whose determinations we will not disturb except for palpable error") (quotation omitted).
There was no abuse of discretion here. As the Supreme Judicial Court explained in King, 387 Mass. at 469, while evidence of past crimes "may not be used to show commission of the crime charged," such evidence can be admitted "to establish knowledge, intent, motive, method, material to proof of the crime charged" (quotation omitted). The King court specifically addressed the admissibility of evidence of uncharged sexual conduct between the defendant, the victim, and the victim's brother. Ibid. The court held that such evidence could be admitted to show a "common pattern or course of conduct," where it was "similar" conduct, and was "sufficiently related in time and location." Id. at 472.
In concluding that the uncharged conduct evidence could be admitted in King, the court cited the evidentiary similarities in "time, place, age, family relationship of the victims, and form of the sexual acts." Ibid. The same similarities are found in the uncharged conduct at issue here. The uncharged acts here took place in the same time period as the charged crimes -- when the victim was ten. The acts also occurred in a home, in bed while the victim was sleeping next to the defendant. And the nature of the acts was also similar. The judge gave a limiting instruction immediately after the testimony, without objection. In a case that depended greatly on the credibility of the victim, the evidence about the events in Lowell provided corroboration regarding the relationship between the defendant and the victim, and the opportunities of the defendant (the defendant admitted that the victim stayed over at his home during the time in question), and tended to show a pattern or common course of conduct. See Commonwealth v. Torres, 86 Mass. App. Ct. 272, 278-279 (2014). As in King, we cannot say the judge abused his discretion in allowing the testimony. See 387 Mass. at 472.
b. Amendment to indictment. The defendant next argues that the trial judge erred in allowing the prosecution to amend the indictment. We discern no error.
Under Mass.R.Crim.P 4(d), as amended, 378 Mass. 849 (1979), a judge has discretion to allow an amendment "of the form" of an indictment "if such amendment would not prejudice the defendant or the Commonwealth." See Commonwealth v. Suero, 465 Mass. 215, 216 n.1 (2013). The amendment must be to form, rather than substance, meaning in particular that a conviction on the original indictment would have barred prosecution on the amended indictment. See Commonwealth v. Snow, 269 Mass. 598, 606, 609-610 (1930) ; Commonwealth v. Bougas, 59 Mass. App. Ct. 368, 370 (2003). An amendment to an indictment also may not "materially change the work of the grand jury." Commonwealth v. Miranda, 441 Mass. 783, 787 (2004) (quotation omitted).
Here, the amendment was one of form, rather than substance. First, the amendment involved the timing of when the event occurred, and so did not affect an element of the offense; time is not an element of the offense of statutory rape. See Commonwealth v. King, 387 Mass. at 467 ; Commonwealth v. Knap, 412 Mass. 712, 714 (1992). The indictment appropriately indicated the alleged age of the victim at the time of the alleged sexual intercourse, which was all that was necessary. See Commonwealth v. King, supra; Commonwealth v. Knap, supra.
Second, the amendment passes the test articulated in Commonwealth v. Snow, because an acquittal of the original indictment would have barred prosecution on the amended indictment. See 269 Mass. at 609-610. This indicates that the amendment is one of form, in that it did not materially change the crime charged. Ibid. Here if the defendant were acquitted on the original charge, no prosecution could have occurred on the amended indictment as it includes an overlapping period of time. See Commonwealth v. Bougas, 59 Mass. App. Ct. at 370.
Furthermore, the defendant has failed to show prejudice. While he attempts to argue that the expansion of the time period affected his trial strategy, he is unable to articulate concrete ways in which his defense, or his preparation, were materially affected. We note as well that the defendant was on notice of the scope of the allegations. The Commonwealth's statement of the case, submitted in 2011, stated that the alleged abuse occurred until late 2010; and in April of 2014, the defendant and the Commonwealth filed a joint pretrial memorandum that described the alleged abuse occurring until 2010.[2]
Finally, the amendment did not materially change the work of the grand jury. A review of the indictment shows that after the amendment the defendant was still charged with conduct that occurred in the same place, against the same victim, and in the same manner. There was no error. See Commonwealth v. Knight, 437 Mass. 487, 494 (2002).
c. Closing arguments. The defendant also argues that statements made during the Commonwealth's closing argument constituted error requiring a new trial. As the defendant did not object at all during the closing argument, we review for whether there was any error and if so, whether it resulted in a substantial risk of a miscarriage of justice. We consider the closing argument as a whole, noting "the fact that the defendant did not object to the statements at trial as some indication that ... the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." Commonwealth v. Degro, 432 Mass. 319, 325-326 (2000) (citation omitted). See Commonwealth v. Kozec, 399 Mass. 514, 518 & n.8 (1987).
The defendant first argues that the prosecutor improperly vouched for the credibility of the Commonwealth's witnesses. For example, the defendant singles out where the prosecutor suggested that the witnesses provided "honest reasons" for not initially disclosing the alleged abuse.[3] The defendant also points to the following passage:
"There were things that [the mother] saw and things that [the mother] heard that concerned her, and that's why she asked. And the reason that [the victim] said it was happening was not because she was somehow suggested into saying it. She said it was happening because it was happening. Because she told her mother the truth."
Read in context, these remarks did not constitute improper vouching. The prosecutor was responding to arguments from defense counsel, to the effect that the victim's testimony was the result of suggestion by her mother. The prosecutor was arguing from the evidence, and urging the jury to reach those conclusions from the evidence. Arguing forcefully from the evidence is appropriate, and in any event the argument did not give rise to a substantial risk of a miscarriage of justice. See Commonwealth v. Roy, 464 Mass. 818, 833 (2013), citing Commonwealth v. Kozec, 399 Mass. at 516.
For similar reasons we reject the defendant's objection to the prosecutor's statement that the evidence was "overwhelming." In context, the prosecutor was not offering her personal opinion on the strength of the evidence, but was instead marshalling and reciting a list of the defendant's statements that were inculpatory, and that corroborated the victim and her mother. Once again, the prosecutor was arguing appropriately from the evidence. See Commonwealth v. Cabral, 69 Mass. App. Ct. 68, 75-76 (2007). Finally, the defendant argues that it was error for the prosecutor to argue that certain witnesses had no motive to lie, and to use rhetorical questions such as: "Why would [the victim] lie about this defendant ... ?" The defendant claims that these arguments improperly shifted the burden of proof.
Once again, there was no error. The statements were made in response to defense counsel's suggestion in closing that the victim and the victim's mother fabricated testimony. It is appropriate for a prosecutor to argue that a prosecution witness "has no motive to lie," particularly when it is in response to an attack on the witness's credibility. See Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 179 (2008). Moreover, while prosecutors should exercise caution in using rhetorical questions, here there was nothing in the argument that tended to shift the burden of proof to the defendant. Rather, the rhetorical questions asked the jury to evaluate the motives of the Commonwealth's witnesses, and were directing the jury to a central question in any case like this one, where the victim's credibility was at issue. See Commonwealth v. Ortega, 441 Mass. 170, 181 (2004), citing Commonwealth v. Kozec, 399 Mass. at 521 ("It is not improper to make a factually based argument that, due to the demeanor, disclosed circumstances, and appearance of a witness, a particular witness should be believed or disbelieved").
Judgments affirmed.

The defendant also argues that the motion to amend the indictment was untimely. However, we note that Mass.R.Crim.P. 4(d) does not contain a time deadline, and there is case law affirming an order allowing a motion to amend an indictment presented on the eve of trial, Commonwealth v. Bougas, 59 Mass. App. Ct. at 370-371, and even during trial, Commonwealth v. Murphy, 415 Mass. 161, 163, 165 (1993).

"And why did she not tell at first? She gave you a lot of reasons. I would suggest to you, ladies and gentlemen, that they were honest reasons."