## Commonwealth *vs.* Charles Ohanian
### (and a companion case[1]).

Middlesex.    November 8, 1977. — December 8, 1977.

Present: Hennessey, C.J., Braucher, Wilkins, Liacos, & Abrams, JJ.

*Larceny.    Pleading, Criminal,* Indictment, Variance.    *Practice, Criminal,* Former jeopardy.    *Evidence,* Prima facie evidence.

At the trial of a defendant charged with obtaining money by means of checks drawn against insufficient funds, evidence that the defendant was informed by his brother, who was the payee, that the checks had been dishonored and a stipulation that "payment was not made within the forty-eight hour statutory requirement" constituted prima facie evidence of the defendant's intent to defraud and of his knowledge of insufficient funds within the meaning of G. L. c. 266, § 37, even though it appeared the defendant was not notified directly by the bank that the checks had been returned for insufficient funds. [841-842]

Evidence that a defendant who altered a check and obtained money thereby knew that the drawer had insufficient funds for payment of the check was sufficient to warrant an inference of his intent to defraud. [842]

Defendants indicted for violations under G. L. c. 266, § 37, were entitled to a dismissal of the indictments on the ground of variance between the allegations and proof where the indictments charged the defendants with drawing or altering checks upon the Union Market National Bank and the proof was that the checks were drawn on the Coolidge Bank and Trust Company. [842-844]

Indictments found and returned in the Superior Court on May 14, 1975.

The cases were tried before *Mazzone,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*James Castleman* for the defendants.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

---

[1] Commonwealth *vs.* Ronald Ohanian.

BRAUCHER, J.   Each of the defendants was convicted on two counts of larceny under G. L. c. 266, § 37,[2] for obtaining money by means of checks drawn against insufficient funds. They appealed under G. L. c. 278, §§ 33A-33G, and we transferred the case to this court on our own motion. We hold that there was a fatal variance between the indictments and the proof, and reverse the convictions. The reversal may not bar reindictment for the same crimes. G. L. c. 263, § 8. We therefore decide the question, fully argued, whether the evidence would warrant conviction under proper indictments.

Each indictment contained two counts. The first alleged that the defendant, on August 29, 1974, "with intent to defraud, did make, draw, utter or deliver a check for payment of money upon the Union Market National Bank with knowledge that the maker or drawer has not sufficient funds or credit at such bank for the payment of said check and thereby did obtain money, in the amount of Forty-Six Hundred dollars," property of the Union Market National Bank. In each indictment the second count was similar, except that the date was August 30, 1974, and the amount was $3,700.

Evidence of the following facts was substantially undisputed. The defendants, Charles and Ronald Ohanian, were

---

[2] As amended through St. 1955, c. 133: "Whoever, with intent to defraud, makes, draws, utters or delivers any check, draft or order for the payment of money upon any bank or other depositary, with knowledge that the maker or drawer has not sufficient funds or credit at such bank or other depositary for the payment of such instrument, although no express representation is made in reference thereto, shall be guilty of attempted larceny, and if money or property or services are obtained thereby shall be guilty of larceny. As against the maker or drawer thereof, the making, drawing, uttering or delivery of such a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank or other depositary, unless the maker or drawer shall have paid the holder thereof the amount due thereon, together with all costs and protest fees, within two days after receiving notice that such check, draft or order has not been paid by the drawee. The word 'credit', as used herein, shall be construed to mean an arrangement or understanding with the bank or depositary for the payment of such check, draft or order."

brothers who were engaged in business together. On August 29, 1974, with Charles's consent, Ronald signed Charles's name as drawer on a check for $4,600 drawn on the Coolidge Bank and Trust Company (Coolidge Bank), payable to Ronald; and Ronald cashed it at the Union Market National Bank (Union Market) the same day. The $3,700 check was drawn by Charles on the Coolidge Bank on August 26, 1974, postdated August 30, 1974, payable to Ronald; Charles mailed it to Ronald, and Ronald cashed it at the Union Market on August 30, 1974.

Both defendants knew before the checks were cashed that the funds in Charles's account at the Coolidge Bank were insufficient to cover either check. There was "no credit line attached to the account." Both checks were dishonored, and the defendants stipulated "that payment was not made within the forty-eight hour statutory requirement." Apart from the stipulation, there was evidence that an officer of Union Market notified Ronald by telephone that the checks had been dishonored, that Charles was informed of their dishonor by his brother within a short period of time, and that the amount of the checks was eventually paid in full. The final payment of $1,700 was made March 9, 1976.

From the prosecutor's opening statement to the jury, it appeared that both checks were drawn on the Coolidge Bank and were cashed at the Union Market. The defendants thereupon moved to dismiss the indictments; the motion was denied, and they excepted. The proof was in accord with the opening, and the defendants moved for directed verdicts at the close of the Commonwealth's case. The judge reserved decision, and denied the motions after both sides had rested. On conviction, each defendant received two concurrent suspended sentences of six months in a house of correction and was placed on probation for two years.

1. *Prima facie evidence.* "As against the maker or drawer thereof," the drawing of a check, "payment of which is refused by the drawee," is "prima facie evidence of intent to defraud and of knowledge of insufficient funds

in, or credit with, such bank," unless the drawer pays the holder "within two days after receiving notice that such check . . . has not been paid by the drawee." G. L. c. 266, § 37. The defendants now contend that Charles was never notified of the return of the checks for insufficient funds, and hence that there was no "prima facie evidence." We think this contention is barred by their stipulation "that payment was not made within the forty-eight hour statutory requirement." Moreover, we think that Charles received "notice" when he was informed by his brother that the checks had been dishonored. Charles was the drawer of both checks. As against him, therefore, there was "prima facie evidence" of the essential intent and knowledge. See *Fuller* v. *Home Indem. Co.*, 318 Mass. 37, 40-41 (1945).

Ronald signed his brother's name as drawer of the $4,600 check, and we think he was sufficiently the "drawer" to bring into play the statutory rule of "prima facie evidence" as to that check. But he was in no sense "the maker or drawer" of the $3,700 check. We must therefore consider, as to that check, the Commonwealth's contention that there was sufficient evidence of Ronald's intent and knowledge apart from any prima facie evidence.

2. *Evidence of Ronald's intent and knowledge.* Apart from the statutory rule of prima facie evidence, there was evidence that Ronald uttered the $3,700 check and obtained money thereby.

There was also evidence of his admission that he knew that Charles, the drawer, had insufficient funds or credit at the Coolidge Bank for the payment of the check. As to his "intent to defraud," we think the evidence was sufficient to warrant inferences that he knew the Union Market would not part with the possession of the money except in return for a check drawn on a sufficient deposit, and that he intended to obtain the money through the implied representation, known by him to be false, that the check was of that character. If there was such a fraud, his intent to repay the money at a later time would not excuse it. See *Commonwealth* v. *Coe*, 115 Mass. 481, 502-503 (1874).

3. *Variance.* We read the words "check . . . upon any

bank" in G. L. c. 266, § 37, as referring to the drawee bank. The drawer impliedly represents that he has sufficient funds or credit at that bank for the payment of the checks drawn by him "upon" that bank. When Charles drew a check on the Coolidge Bank, he made no representation that he had funds or credit at the Union Market. Thus an indictment charging that he did "draw" or "utter" a check on the Union Market did not accurately describe the act proved.

Under G. L. c. 277, § 35, a defendant is not to be acquitted on the ground of variance between the allegations and proof "if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defence. He shall not be acquitted by reason of an immaterial misnomer of a third party . . . ." In *Commonwealth* v. *Azer*, 308 Mass. 153, 154-155 (1941), the defendant was charged with unlawfully selling alcoholic beverages to Harry Jones. When it appeared that the true name of the purchaser was Wilfred Williams, a verdict of not guilty was directed. We upheld a second prosecution for the same sale. In the absence of proof that Williams was known as Jones, "evidence of a sale to Williams would not warrant conviction for an alleged sale to Jones, unless the misnomer was 'immaterial.' . . . The statute cited did not cure the variance, for without proof that the man was known by both names, the offence proved was wholly different from that charged, and the variance was not 'immaterial.' " Contrast *Commonwealth* v. *Snow*, 269 Mass. 598, 600-601 (1930), where proof of threats against Nora C. Downs was held sufficient under an indictment for threatening Nora Downs.

In the present case the misnomer is not immaterial, and we do not think the essential elements of the crime were correctly stated. The indictments allege that the defendants knew that the drawer did not have sufficient funds or credit at the Union Market to pay the checks. But one who draws checks against an account in the Coolidge Bank is under no obligation to have funds or credit at some other bank.

Moreover, there is a substantial likelihood that the defendants were prejudiced in their defense. The Common-

wealth introduced testimony that Ronald said he drew one of the checks on the Union Market, and that there were insufficient funds. On cross-examination of the defendants the Commonwealth obtained admissions that they had not arranged for credit from the Union Market. The judge's instructions to the jury did not make it clear that the insufficient funds or credit referred to in the statute meant funds or credit at the Coolidge Bank rather than at the Union Market. After the jury had deliberated for more than two hours, they asked for a copy of the statute. The judge denied the request, but read the statute to them slowly. In the light of the indictments and the proof, that reading must have been thoroughly confusing.

The judgments must therefore be reversed, the verdicts set aside, and the indictments dismissed. Such an acquittal may not bar conviction for the same crimes on new indictments. G. L. c. 263, § 8. *Commonwealth* v. *Azer*, 308 Mass. 153, 155-156 (1941), and cases cited. *Commonwealth* v. *DiStasio*, 297 Mass. 347, 356-357, cert. denied, 302 U.S. 683, 759 (1937). *Commonwealth* v. *Campopiano*, 254 Mass. 560, 562 (1926). *United States* v. *Ball*, 163 U.S. 662, 671-672 (1896). See *United States* v. *Dinitz*, 424 U.S. 600, 610 (1976).

*So ordered.*