COMMONWEALTH *vs.* REINALDO SANTO.

Hampden. January 3, 1978. — May 23, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Constitutional Law*, Waiver of constitutional rights. *Waiver. Practice, Criminal*, Charge to jury. *Homicide. Robbery.*

Evidence at a hearing on a motion to suppress statements made by a Spanish-speaking defendant to the police that the defendant understood English and therefore comprehended the Miranda warnings given him, that a prior interrogation was terminated after the defendant chose to remain silent and was resumed only after the passage of a significant period of time, and that the defendant had been informed prior to the second interrogation that an attorney had called and asked to speak to him but that the defendant said he did not want to speak to the attorney warranted a finding that the defendant had voluntarily, knowingly, and intelligently waived his rights to remain silent and to the assistance of counsel. [302-305]
The judge at a criminal trial did not err in failing to instruct the jury concerning lesser included offenses which were unsupported by the evidence. [305-307]

INDICTMENTS found and returned in the Superior Court on November 7, 1974.

The cases were tried before *Hallisey*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own intitiative, ordered direct appellate review.

*Susan J. Baronoff* for the defendant.

*L. Jeffrey Meehan*, Special Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant Reinaldo Santo was indicted for murder in the first degree and armed robbery. After a jury trial, he was convicted of murder in the second degree and unarmed robbery. Pursuant to G. L. c. 278, §§ 33A-33G, he appeals his convictions. Santo argues assignments of error concerning (1) a motion to suppress a statement and (2) the refusal of the trial judge to charge on involuntary manslaughter and on two offenses — assault with intent to rob and larceny — as lesser included offenses of robbery. We find no error and we decline to exercise our authority under G. L. c. 278, § 33E.

We summarize the evidence presented at the trial. Justino Santana, who occupied a room in a rooming house next to the room of the victim Edward J. Premont, testified that on September 12, 1974, Premont produced some money from his pocket and gave Santana twenty dollars to purchase groceries and six containers of beer. When Santana returned he gave back three or four dollars to Premont.

That evening Premont, Santana, and two other tenants were in Premont's room eating sandwiches, drinking soda, and watching television. At approximately 9:15 P.M. Santana saw Santo, together with one Jose Martinez in the vicinity of Premont's room. Santana overheard Santo and Martinez talking in Spanish in the hallway outside the room. He testified that Santo said that they had to make some money and that they would take the money from someone and kill him. Premont and the other two tenants did not understand Spanish, and thus they did not know what Santo and Martinez were planning.

When Santo and Martinez appeared at Premont's door, he invited them inside and offered them food and drink. Santana and the other two tenants then returned to their respective rooms, leaving Premont alone with Santo and Martinez.

At some point Premont went to Santana's door and invited him to come back to his room because he was afraid. Santana heard Premont "grunting" and Santo saying that they "were going to kill the old man and take his money and escape." Santana went into the hallway so that he could see inside Premont's room. He observed Santo and Martinez striking Premont and tying him up. He saw Santo thrusting his hands into Premont's pocket and heard Premont ask them "[n]ot to tie his hands." Santana was afraid of Santo and Martinez so he remained in his room with the door closed until he went to work the next morning.

On September 13, 1974, Premont was discovered dead in his room. He was found in a chair which had been tipped over backwards. He was bound by a belt and an electrical cord, a necktie was stuffed in his mouth as a gag, a pair of trousers was wrapped tightly around his neck, and a pillow was covering his head. The medical examiner testified that Premont died between 9 P.M. on September 12 and 3:00 A.M. on September 13, as a result of asphyxia due to the gag and the ligature around his neck. Premont had several bruises about his head, arms, thighs, lower abdomen, and genitals; he also had several broken ribs. No money was found during a search of the room.

The defendant gave a statement to police in which he admitted that he was in the rooming house on the night of the killing; he said that he heard Martinez hitting Premont and Premont shouting for help; and he denied participation in the killing and robbery. After a voir dire during the trial, the judge concluded that the statement was admissible. The defendant argues that it was prejudicial error to admit this statement because the Commonwealth did not meet its burden of demonstrating a knowing, intelligent, and voluntary

waiver of the rights to remain silent and to the assistance of counsel.

1. *Admissibility of the Defendant's Statement.*

We summarize the testimony presented at the voir dire and the judge's findings.[1] On September 24, 1974, Santo was arrested in Hartford, Connecticut, by the Hartford police. On that same day Captain James Williams of the Springfield police arrived in Hartford to speak with Santo. The judge found that the defendant was given full Miranda warnings in English before any interrogation in Hartford. At this time the defendant stated in English that he did not want to discuss the killing. The conversation was then terminated.

The following day Santo was transferred to Springfield and was brought to Captain Williams's office. The judge found that full Miranda warnings were again given in English before any questioning. He also found that Captain Williams informed Santo that Attorney Edward Hurley had called on his behalf and wanted to talk to him. The judge found that the defendant stated he did not want to talk to the attorney, that he indicated a willingness to discuss the murder, and that he then provided the statement in question. He further found that the police interrogating Santo did not understand that he had hired an attorney, and that they did not notify the attorney of the intended interrogation of Santo.

The judge found that Santo understood English and concluded that Santo knowingly, voluntarily, and intelligently

---

[1] At the trial, the defendant urged that the waiver was involuntary only because he did not understand English. After the voir dire, the judge orally found that the defendant understood English sufficiently to make a valid waiver of his rights. In his brief before this court the defendant urged two additional grounds for finding the waiver invalid. Since we chose to consider these additional grounds pursuant to our authority under G. L. c. 278, § 33E, see *Commonwealth* v. *Daniels,* 366 Mass. 601, 607-609 (1975), we remanded the case to the judge for supplemental written findings. See *Commonwealth* v. *Tempesta,* 361 Mass. 191, 193-195 (1972). The findings of fact discussed in the text of this opinion are taken from these supplemental findings.

chose to waive his right to remain silent and his right to counsel.

To determine whether a defendant voluntarily waived his rights, we consider the waiver in light of the totality of all the surrounding circumstances. *Commonwealth* v. *Borodine*, 371 Mass. 1, 6 (1976), cert. denied, 429 U.S. 1047 (1977). *Commonwealth* v. *Hosey*, 368 Mass. 571, 574-575 (1975). *Commonwealth* v. *Daniels*, 366 Mass. 601, 606 (1975). Explicit statements that a defendant understood his rights and voluntarily relinquished them are not essential for a valid waiver. *Commonwealth* v. *Valliere*, 366 Mass. 479, 487 (1974).

In reviewing a trial judge's determination that a voluntary waiver was made, the judge's subsidiary findings will not be disturbed, if they are warranted by the evidence, and his resolution of conflicting testimony wil be accepted. *Commonwealth* v. *Mahnke*, 368 Mass. 662, 666-667 (1975), cert. denied, 425 U.S. 959 (1976). However, the judge's ultimate findings and conclusions of law, especially those of constitutional dimension, are open for our independent review on appeal. *Commonwealth* v. *Amazeen, ante* 73, 77 n.3 (1978). *Commonwealth* v. *Mahnke, supra* at 667. *Commonwealth* v. *Murphy*, 362 Mass. 542, 551 (1972) (Hennessey, J., concurring).

The defendant first contends that there was no voluntary waiver because the Miranda warnings were given in English, not his native Spanish, and he therefore did not understand his rights. The judge found that the defendant did understand English and that he therefore comprehended his rights. Ample evidence existed which warranted the judge in reaching this conclusion. Two witnesses testified that they had conducted conversations with the defendant in English, and the officers present at the interrogation stated that he appeared to understand English during the questioning. The defendant's contention that he did not understand English was substantially impeached by the fact that during the voir dire he often answered questions without waiting for the interpreter to translate the question.

The defendant next argues that the fact that he had initially refused to talk to the police in Hartford indicates that he did not voluntarily waive his rights before he gave his statement in Springfield. The mere fact that a defendant at first chooses to exercise his right to remain silent does not preclude a subsequent valid waiver during a later interrogation. See *Michigan* v. *Mosley*, 423 U.S. 96, 102-104 (1975). The determination whether statements made during a subsequent interrogation are admissible turns on whether the defendant's right to discontinue questioning was honored. *Id.* at 104. In the present case this right was clearly respected. The police had terminated the prior interrogation after the defendant chose to remain silent; they resumed questioning only after the passage of a significant period of time; and they provided the full Miranda warnings before the start of the second interrogation. See *id.* at 102-106.

Moreover, the judge explicitly found that the defendant expressed a willingness to discuss the killing with Captain Williams in Springfield. This finding was warranted on the basis of the testimony of the officers who conducted the questioning.

The defendant next contends that the failure of the police to notify Mr. Hurley of the proposed investigation rendered the statement inadmissible. However, the judge found that the police did not understand that the defendant had engaged any attorney in connection with the killing of Premont. This conclusion was warranted by the fact that Mr. Hurley, who had represented the defendant in other actions, called the police station after learning of the defendant's arrest from someone other than the defendant and volunteered his services. Moreover, the judge also found that prior to any questioning during the second interrogation Captain Williams informed the defendant that Mr. Hurley had called and asked to talk to him and that the defendant had stated that he did not want to speak to Mr. Hurley. Although the defendant denied that he refused

Mr. Hurley's services, the determination whether he was to be believed was for the judge.

Where, as here, it is unclear that a particular attorney is to represent a defendant and the fact that an attorney has called is made known to the defendant, the failure to notify the attorney of the proposed interrogation does not preclude a valid waiver of a defendant's Miranda rights. See *Commonwealth* v. *Murray*, 359 Mass. 541, 543-546 (1971); *Commonwealth* v. *McKenna*, 355 Mass. 313, 323-325 (1969). Cf. *Commonwealth* v. *Mahnke, supra* at 692. The defendant's statement that he did not want to see Mr. Hurley could therefore be found to constitute a voluntary waiver of his right to counsel.

The judge did not err when he determined that the defendant had voluntarily, knowingly, and intelligently waived his rights to remain silent and to the assistance of counsel. We reach the same ultimate conclusions based on the judge's resolution of the conflicting testimony concerning the subsidiary facts.

2. *Jury Instructions.*

The defendant next argues that the judge erred in failing to instruct the jury concerning involuntary manslaughter,[2] assault with intent to rob, and larceny. A judge is required to charge the jury concerning lesser included offenses if the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense. See *Commonwealth* v. *McKay*, 363 Mass. 220, 228 (1973); *Commonwealth* v. *Costa*, 360 Mass. 177, 184 (1971); *Commonwealth* v. *LePage*, 352 Mass. 403, 419 (1967). However, a judge is not required to instruct on a

---

[2] The defendant did not object or except to the failure to charge on involuntary manslaughter. In fact, he stated that he thought he would "be getting a bonus if [he] got involuntary." Although ordinarily nothing is presented for review without an objection and an exception, in our discretion we choose to review the failure to charge on involuntary manslaughter under G. L. c. 278, § 33E. See *Commonwealth* v. *Rego*, 360 Mass. 385, 393-394 (1971); *Commonwealth* v. *McCauley*, 355 Mass. 554, 558-559 (1969).

hypothesis that is not supported by the evidence. *Commonwealth* v. *Costa, supra* at 184.

"Involuntary manslaughter is an unlawful homicide, unintentionally caused (1) in the commission of an unlawful act, malum in se, not amounting to a felony nor likely to endanger life . . . or (2) by an act which constitutes such a disregard of probable harmful consequences to another as to constitute wanton or reckless conduct." *Commonwealth* v. *Campbell*, 352 Mass. 387, 397 (1967). See *Commonwealth* v. *Lacasse*, 365 Mass. 271, 273 (1974). On no view of the evidence could it rationally be found that a death which resulted from a ligature around the neck and a gag in the mouth and which was accompanied by severe bruises and broken ribs was unintentionally caused. See *Commonwealth* v. *LeBlanc*, 373 Mass. 478, 491 (1977); *Commonwealth* v. *Lewinski*, 367 Mass. 889, 897 (1975); *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 744-747 (1975); *Commonwealth* v. *Costa, supra* at 184-185. Cf. *Commonwealth* v. *McCauley*, 355 Mass. 554, 560-561 (1969).

Relying on *Commonwealth* v. *Campbell*, 352 Mass. 387 (1967), the defendant contends that since the jury could have found that he struck and bound Premont in an effort to subdue him, they could have returned a verdict of involuntary manslaughter. However, unlike in *Campbell*, if the jury found that the death resulted from an attempt to subdue the victim, there was no evidence that the act of subduing was necessary other than for the purpose of facilitating a felony. See *Commonwealth* v. *LePage, supra* at 419-420. Moreover, the thrust of some of the evidence in *Campbell* was that the death was caused accidentally; as indicated, the evidence in this case would not warrant a conclusion that the killing was unintentional.

In connection with the robbery charge, there was evidence that Premont had money in his pocket on September 12, 1974, that the defendant had stated he would kill someone and take his money, that the defendant put his hands into Premont's pockets, and that no money was found in the victim's room or on his body on September 13. The defend-

ant argues that an instruction on assault with intent to rob should have been given because the jury could have concluded that the defendant did not take any money. However, money which was known to be in the defendant's possession was missing and there was no evidence that any person other than the defendant and Martinez had the opportunity to take this money. See *Commonwealth* v. *Rego*, 360 Mass. 385, 390-391 (1971).

To prove larceny all the elements of robbery, except the element that the taking was accomplished by force or fear, must be shown. See *Commonwealth* v. *Novicki*, 324 Mass. 461 (1949). The defendant argues that the judge should have instructed on larceny because the jury could have concluded that the money was not taken during the course of the beating and tying up or that it was taken surreptitiously. However, there was no evidence that the money was taken at a time sufficiently removed from the struggle so that its taking would not have been accomplished by force or fear. Nor, in view of the condition of the victim, was there evidence that the taking had been achieved without force. See *Commonwealth* v. *Hogg*, 365 Mass. 290, 295 (1974). Cf. *Commonwealth* v. *Novicki, supra.*

There is no requirement that a judge charge on factual situations which are speculative or conjectural and which are unsupported by evidence. *Commonwealth* v. *Caine*, 366 Mass. 366, 374-375 (1974). There was no error.

3. *General Laws c. 278, § 33E.*

Pursuant to our authority under G. L. c. 278, § 33E, we have reviewed the entire record and transcript. We concluded that neither a new trial nor a reduction in the verdicts is warranted.

*Judgments affirmed.*