COMMONWEALTH *vs.* JACKIE J. HOBBS.

Suffolk. January 5, 1982. — April 28, 1982.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law,* Public trial. *Practice, Criminal,* Variance, Instructions to jury, Examination of jurors. *Burglary. Due Process of Law,* Examination of jurors. *Assault.*

In criminal proceedings arising from an attack on two children, it was proper to exclude the public under G. L. c. 278, § 16A, during the testimony of the child who was the victim of an assault and battery committed in connection with sexual offenses against the second child, and who was an eyewitness to the sex-related crimes. [865-869]

At the trial of an indictment charging that the defendant had broken and entered with intent "to commit a felony, to wit: larceny," the judge did not err in refusing to limit his instructions to the particular felonious intent named in the indictment, where intent to commit any of the felonies described by the judge would support a conviction and where the defendant could not have been surprised in his defense when the judge mentioned felonies other than larceny. [869-871]

At the trial of charges arising from an attack on two children, the judge did not err in refusing the defendant's request for an instruction on simple assault as a lesser offense included in the charge of assault with intent to rape where there was no basis in the evidence for finding a simple assault and where the charge as a whole informed the jury of the possibility of convictions of lesser crimes. [871-872]

Although interrogation of jurors as to racial prejudice is not constitutionally mandated in cases involving interracial sexual offenses against children unless the defendant is a "special target" for racial prejudice, this court held that in such cases tried hereafter jurors are to be examined individually with respect to racial prejudice pursuant to G. L. c. 234, § 28, second par., if such examination is requested by the defendant. [872-874]

INDICTMENTS found and returned in the Superior Court Department on August 18, 1980.

The cases were tried before *Prince,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Milly Whatley* for the defendant.

*Michael J. Traft,* Assistant District Attorney (*Eugene M. Russell,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

HENNESSEY, C.J. The defendant was convicted on several charges arising from an attack upon two children in their home. His principal argument on appeal is that he was denied a public trial. He also claims that the judge erred in refusing several requests concerning jury instructions, and in declining to question prospective jurors individually on the issue of racial bias. We find no error, and affirm the judgments of conviction.

The two victims, whom we shall refer to as Susan and Gary, are sister and brother. Susan, who was thirteen years old at the time of the crimes, testified that she had fallen asleep one evening at the foot of Gary's bed. She awoke to find the defendant, a stranger, removing her clothes. The defendant began to masturbate, and may have climbed onto the bed. When Susan tried to scream, the defendant grasped her throat. Susan could not recall whether he touched any other part of her body.

Gary, who was nine years old, gave a similar account. He awoke while the defendant was in the bedroom, and saw the defendant masturbating and assailing Susan. When Gary tried to push the defendant away from Susan, the defendant slapped Gary's leg and ordered him to lie down. Eventually, the defendant left, taking with him a bicycle kept in the front hall. Shortly thereafter police apprehended the defendant riding the bicycle. Both children identified him as their assailant.

The defendant was indicted by a grand jury for armed burglary,[1] assault and battery with a dangerous weapon

---

[1] The indictment charged that: "[O]n [August 7, 1980], at Boston aforesaid, the dwelling house of [the victims' father] there situate, in the

(upon Susan), indecent assault upon a child under fourteen (Susan), assault with intent to rape a child under sixteen (Susan), assault and battery (upon Gary), and larceny. On the first two of these charges, the jury found the defendant guilty of the lesser included offenses of unarmed burglary and assault and battery upon Susan. On the four remaining charges, they found him guilty as charged. The defendant appealed, and we transferred the case to this court on our own motion.

1. *Exclusion of the Public.*

The trial judge, at the request of the Commonwealth, and over the defendant's objection, excluded the general public from the courtroom during the testimony of both Gary and Susan at a pretrial hearing on a motion to suppress identification evidence, and during Susan's testimony at trial. Family of the defendant, members of the bar, and members of the press were allowed to remain. The defendant argues that closure during Gary's testimony was beyond the judge's authority under G. L. c. 278, § 16A, which governs public attendance at trials involving sexual offenses against children. He also contends that the closure violated his right to a public trial under the Sixth Amendment to the United States Constitution.[2]

The Commonwealth raises a threshold question whether the concept of an open trial extends to a pretrial suppression hearing.[3]  See *Richmond Newspapers, Inc.* v. *Virginia,* 448

___

night time of said day, did break and enter with intent then and therein to commit a felony, to wit: larceny in the building of [the victims' father], and did then and therein make an actual assault upon [Susan] who was then lawfully therein, the [defendant] being armed with a certain dangerous weapon, to wit: a sharp instrument, a more particular description of which is unknown to the said JURORS, at the time of such breaking and entering."

[2] The defendant does not argue that the judge erred in excluding the public during Susan's testimony, either at the pretrial hearing or at trial.

[3] The defendant asserts that spectators may have been excluded during Gary's testimony at trial. This assertion is without solid support in the record. When the Commonwealth raised the issue of exclusion, before the pretrial hearing, the judge stated that he would rule as each witness was called to the stand. Accordingly, he ordered spectators to leave when

U.S. 555, 564 (1980); *Gannett Co.* v. *DePasquale,* 443 U.S. 368, 378-379, 387-388 (1979). Cf. *Globe Newspaper Co.* v. *Superior Court,* 379 Mass. 846, 851-852 (1980), vacated and remanded, 449 U.S. 894 (1980) (hereinafter *Globe I*). Certainly, the guaranty of a public trial does not apply to all aspects of the criminal process. See *United States ex rel. Bennett* v. *Rundle,* 419 F.2d 599, 605 (3d Cir. 1969), and cases cited. At a suppression hearing, closure may sometimes be necessary to protect the defendant's interests. See *Commonwealth* v. *Jackson,* 3 Mass. App. Ct. 288, 290 (1975); *Gannett Co.* v. *DePasquale, supra* at 378-379. The Supreme Court, however, has not taken a clear position with respect to a defendant's assertion of his Sixth Amendment right to a public trial at a suppression hearing, cf. *id.,* and we prefer not to rest our decision on a possible distinction between trial and pretrial proceedings. See *United States* v. *Clark,* 475 F.2d 240, 246-247 (2d Cir. 1973); *United States ex rel. Bennett* v. *Rundle, supra* at 605-606. Therefore, we assume for purposes of this discussion that the same statutory and constitutional principles apply to Gary's pretrial testimony as would apply to his testimony at trial.

Both the Commonwealth, in requesting closure, and the judge, in granting it, relied exclusively on G. L. c. 278, § 16A. The Commonwealth gave no independent reasons for its request, stating simply that the statute required exclusion of the public during Susan's and Gary's testimony. The judge made no inquiry into the need to exclude the public in the circumstances at hand, and stated no findings.[4]

---

Susan took the stand at the pretrial hearing, again when Gary took the stand at the pretrial hearing, and again during Susan's testimony at trial. Neither the Commonwealth nor the judge mentioned exclusion when Gary testified at trial.

[4] We have recognized that judges have an inherent power to maintain the order and integrity of trial, which may justify closure in some situations. *Commonwealth* v. *Stetson,* 384 Mass. 545, 550 (1981). *Globe I,* 379 Mass. 846, 864-865, vacated and remanded, 449 U.S. 894 (1980). But the constitutional principles at stake require special caution. Apart from

General Laws c. 278, § 16A, provides that all persons except those directly interested in the case shall be excluded during trials at which defendants are charged with sexual offenses against children. In recognition of the essential role of public trials in our judicial process, and the interests of both the defendant and the public in open proceedings, we have read § 16A narrowly. *Globe I, supra* at 853-856. See generally *Globe Newspaper Co.* v. *Superior Court,* 383 Mass. 838, prob. juris. noted, 454 U.S. 1051 (1981) (hereinafter *Globe II*); *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555 (1980); *In re Oliver,* 333 U.S. 257 (1948). In *Globe I, supra* at 861, we held that the statute mandates closure only during the testimony of the child victim. Even then, friends and relatives of a defendant are considered to have a direct interest in the trial, and may stay. *Commonwealth* v. *Blondin,* 324 Mass. 564, 571 (1949), cert. denied, 339 U.S. 984 (1950).

In the present case, we believe that § 16A required exclusion of the public during the testimony of both Susan and Gary. Susan was clearly the victim of alleged sexual offenses. Although the indictments charged only simple assault and battery against Gary, he can also properly be considered a "victim," within § 16A. He was the child victim of a crime committed in connection with sexual offenses against another minor, and an eyewitness to the sex-related crimes. The sex offenses against Susan and the assault and battery against Gary were at issue in a single proceeding. In these special circumstances, Gary as well as Susan was protected by the statute.

---

the narrow circumstances covered by the mandate of G. L. c. 278, § 16A, the judge must permit all those who wish to attend to voice their objections to closure, and he must make specific findings of reasonable necessity. *Globe I, supra* at 865-866. In reaching his determination, the judge must consider the defendant's Sixth Amendment rights as well as the First Amendment rights of the public. Because these procedures were not followed here, we will sustain the judge's action only if it fell within the statute.

Section 16A, as we have construed it, is consistent with
the defendant's Sixth Amendment right to a public trial.[5]
The right to an open trial is an important and time-honored
right, basic to our system of justice, but it is not absolute.
*Commonwealth* v. *Stetson,* 384 Mass. 545, 549-551 (1981).
*Commonwealth* v. *Bohmer,* 374 Mass. 368, 380 (1978). See
*In re Oliver,* 333 U.S. 257, 266-271 (1948). See generally
Note, The Right to a Public Trial in Criminal Cases, 41
N.Y.U.L. Rev. 1138, 1144-1146 (1966). Judges may ex-
clude spectators from the courtroom when necessary to pro-
tect witnesses, shelter confidential information, or maintain
order. See, e.g., *Commonwealth* v. *Bohmer, supra* at
380-381 (order); *United States ex rel. Latimore* v. *Sielaff,*
561 F.2d 691, 693-696 (7th Cir. 1977), cert. denied, 434
U.S. 1076 (1978) (rape victim); *United States ex rel. Lloyd*
v. *Vincent,* 520 F.2d 1272, 1274-1275 (2d Cir.), cert.
denied, 423 U.S. 937 (1975) (informant); *United States* v.
*Bell,* 464 F.2d 667, 669-670 (2d Cir.), cert. denied, 409
U.S. 991 (1972) ("skyjacker" profile); *United States ex rel.
Orlando* v. *Fay,* 350 F.2d 967, 971 (2d Cir. 1965), cert. de-
nied sub nom. *Orlando* v. *Follette,* 384 U.S. 1008 (1966)
(order); *Geise* v. *United States,* 262 F.2d 151, 156-157 (9th
Cir. 1958), cert. denied, 361 U.S. 842 (1959) (child victim
of sexual offenses). See generally *Gannett Co.* v. *DePas-
quale,* 443 U.S. 368, 388 n.19 (1979). Additionally, we be-
lieve that the Legislature may require automatic closure in
narrow situations, such as the testimony of child victims of
sexual offenses, in which the need to protect witnesses is
clear. Cf. *Globe II, supra* at 851-852. Exclusion of the
public protects witnesses' ability to testify by removing a

---

[5] The Sixth Amendment issues raised here are distinct from the contro-
versy of the *Globe* cases. The challenge to § 16A in the *Globe* cases was
based on the public's right of access to criminal trials, a right that appears
to stem from the First Amendment rather than the Sixth Amendment. See
*Globe II,* 383 Mass. 838, 842 n.6 (1981). Compare *Richmond News-
papers, Inc.* v. *Virginia,* 448 U.S. 555, 575-580 (opinion of Burger, C.J.),
583-584 (Stevens, J., concurring), 585 (Brennan, J., concurring), 599
(Stewart, J., concurring) (1980), with *Gannett Co.* v. *DePasquale,* 443
U.S. 368, 384-391 (1979).

source of fear, confusion, and distraction, and may encourage victims to report and prosecute crimes. *Globe II, supra* at 851, 853. *Globe I, supra* at 859. When the victim is a child who must testify about sexual incidents these interests justify a mandatory closure rule that is carefully tailored to the problems it is designed to alleviate, as is § 16A.

2. *Variance Between Indictment and Instructions on Burglary Charge.*

The defendant was indicted for armed burglary and convicted of unarmed burglary. The indictment charged that the defendant had broken and entered with intent "to commit a felony, to wit: larceny."[6] At several points during his instructions on the element of specific intent to commit a felony, the judge informed the jury that a felony could be rape, robbery or homicide, as well as larceny. The defendant objected, requesting that the judge limit his instructions to the particular felonious intent named in the indictment — intent to commit larceny.[7] The judge refused to do so. The defendant now contends that this was reversible error, because the instructions permitted the jury to consider proof at variance with the indictment.

As a general rule, a crime must be "proved as charged." *Commonwealth v. Grasso,* 375 Mass. 138, 139 (1978). This requirement protects the grand jury's role in the criminal process, and ensures that the defendant has proper notice of the charges against him. See *Commonwealth v. Whitehead,* 379 Mass. 640, 647-650 (1980); *Commonwealth v. A Juvenile,* 365 Mass. 421, 440 (1974); *Commonwealth v. Snow,* 269 Mass. 598, 605-606 (1930). See also *Hamling v. United States,* 418 U.S. 87, 117 (1974); *Stirone v. United States,* 361 U.S. 212, 215-219 (1960). The rule does not, however, apply to technical defects that do not affect substantial rights. General Laws c. 277, § 35, provides that variance between the indictment and the Commonwealth's proof is not ground for acquittal if the indictment states

---

[6] The full indictment is quoted at note 1, *supra.*

[7] The defendant was in fact convicted of larceny of a bicycle.

correctly the essential elements of the crime, and the variance does not prejudice the defendant in his defense.[8]  The same principle applies on review of a conviction, when the defendant claims that the judge's instructions created a variance between the indictment and the proof to be considered.  See *Commonwealth* v. *A Juvenile, supra* at 439-440.  Thus we have upheld convictions when the particular terms of the indictment from which the evidence or instructions depart were merely "surplusage" — unnecessary to describe the crime — and did not mislead the defendant, confuse the jury, or raise the danger of retrial after acquittal.  See, e.g., *Commonwealth* v. *Whitehead, supra* at 646-650 (proof of female-to-female rape under indictment charging "sexual intercourse" by force); *Commonwealth* v. *Grasso, supra* at 139-140 (shotgun possession — discrepancy in description of gun); *Commonwealth* v. *A Juvenile, supra* at 439-440 (manslaughter — discrepancy in description of weapon).  Contrast *Commonwealth* v. *Ohanian,* 373 Mass. 839, 843-844 (1977) (obtaining money by checks drawn on insufficient funds — misnomer of drawee bank prejudiced defense and may have affected elements of crime).

Here, the allegation in the indictment of the particular felony intended (larceny) was harmless surplusage.  It was not necessary to describe the crime of burglary; intent to commit any of the felonies described by the judge would constitute a state of mind sufficient to support conviction.  The incident from which the charges arose was clear from the date and location of the burglary, both stated in the indictment.  Other indictments charged several felonies in

---

[8] In addition, a judge may permit the Commonwealth to amend the indictment, provided that the amendment will not result in prejudice. Mass. R. Crim. P. 4 (d), 378 Mass. 849 (1979).  Although we have stated that the propriety of an amendment turns on whether the change is one of "substance," see *Commonwealth* v. *Liebman,* 379 Mass. 671, 676 (1980); *Commonwealth* v. *Snow,* 269 Mass. 598, 606 (1930), the concerns at stake and the test to be applied are essentially the same as in a case of variance. See *Commonwealth* v. *Liebman, supra* at 676; *Stirone* v. *United States,* 361 U.S. 212, 215-219 (1960); *Gaither* v. *United States,* 413 F.2d 1061, 1071-1072 (D.C. Cir. 1969).

addition to larceny of a bicycle, and the burglary indict-
ment itself mentioned an armed assault within the building.[9]
In these circumstances the defendant could not have been
surprised in his defense when the judge mentioned felonies
other than larceny. Nor is there any suggestion that the
judge's definition of felony crimes might have confused the
jury. Contrast *Commonwealth* v. *Ohanian, supra* at 844.
Finally, a subsequent indictment, based on the same inci-
dent but naming a different form of felonious intent, would
be barred on grounds of former jeopardy. See, e.g., *Galli-
naro* v. *Commonwealth,* 362 Mass. 728, 732-733 (1973). In
sum, the defendant points to no possible prejudice other
than the fact that the jury, in finding him guilty, may have
relied on a felonious intent other than intent to steal a bicy-
cle. This is not prejudice in the defense of the case, but
simply the natural disadvantage caused by the probative
effect of the variant evidence.

3. *Instructions on Lesser Offenses.*

The defendant next argues that the judge erred in refus-
ing the defendant's request for an instruction on simple
assault as a lesser offense included in the charge of assault
with intent to rape. *Commonwealth* v. *Lewis,* 9 Mass.
App. Ct. 842 (1980). When the evidence permits a finding
of a lesser included offense, a judge must, upon request, in-
struct the jury on the possibility of conviction of the lesser
crime. *Commonwealth* v. *Campbell,* 352 Mass. 387, 392
(1967). No such instruction is necessary, however, when
the evidence provides no "rational basis for acquitting the
defendant of the crime charged and convicting him of the
lesser included offense." *Commonwealth* v. *Santo,* 375
Mass. 299, 305 (1978). *Commonwealth* v. *McKay,* 363
Mass. 220, 228 (1973). "[A] judge is not required to instruct
on a hypothesis that is not supported by evidence." *Com-
monwealth* v. *Santo, supra* at 305-306.

Conceivably, a jury considering the evidence in this case
might have found that the defendant lacked specific intent

---

[9] See notes 1 and 7, *supra.*

to carry out a rape. But there was no basis for finding a simple assault. Both Susan and Gary testified that the defendant had masturbated, and Susan testified that he had touched her and removed her clothes. The defendant testified that before his arrest he had never encountered the children or been to their home. On this evidence, if any assault took place, it was an aggravated assault. Several forms of aggravated assault were presented to the jury, both in the indictments and in the judge's instructions. In addition to assault with intent to rape, the defendant was charged with indecent assault and battery upon a child, and the judge informed the jury that if they failed to find a specific intent to rape, they might still convict the defendant of indecent assault and battery.[10] Another indictment charged assault and battery upon Susan by means of a dangerous weapon, and the judge explained that the jury might find the defendant guilty of the lesser included offense of assault and battery. Reading the instructions as a whole, we conclude that the jury were well informed of the possibility of convictions of lesser crimes. See *Commonwealth* v. *McKay, supra* at 228-229. There was no need for an instruction on the implausible theory of simple assault.

4. *Questioning of Prospective Jurors on Racial Prejudice.*
The defendant's final argument is that the judge, in examining prospective jurors, did not adequately address the possibility of racial bias. The judge refused the defendant's request that he ask each juror, individually, two questions related to racial prejudice. Instead, he inquired generally of the prospective jurors, listing several factors, including racial bias, that might affect their impartiality. He then called each juror individually to the side bar, and asked

---

[10] At the conclusion of his instructions on assault with intent to rape, the judge stated that, "[i]f you are unable to find that the defendant had such intent, then the verdict should be not guilty. And, having determined that, if you determine he is not guilty, then of course you would consider the next question of indecent assault and battery. Was there a lesser act carried on which constituted the crime as I described it to you of indecent assault and battery?"

whether, on reflection, there was any reason why the juror could not be fair and impartial in the case.

Under G. L. c. 234, § 28, when it appears to a judge that prospective jurors may be affected by an extraneous issue, such as racial prejudice, he must examine the jurors individually, asking specific questions about the problem perceived. *Commonwealth* v. *Shelley*, 381 Mass. 340, 353 & n.12 (1980). *Commonwealth* v. *Dickerson*, 372 Mass. 783, 793 (1977). Ordinarily, it is for the judge to determine when a problem of extraneous influence has arisen. His actions will be upheld unless he has abused his discretion by refusing to examine jurors in the face of a "substantial risk" of bias. *Commonwealth* v. *Shelley*, *supra* at 352. See *Commonwealth* v. *Lumley*, 367 Mass. 213, 216 (1975). In the sensitive area of racial prejudice, however, we have imposed more specific limits on judges' discretion. Thus, in *Commonwealth* v. *Sanders*, 383 Mass. 637 (1981), we held that in any case involving interracial rape, the judge must question each juror, out of the hearing of the venire, about the possibility of racial prejudice. *Id.* at 641. Our holding in Sanders, however, was based, not on a constitutional mandate, but on the need for caution and certainty in the application of § 28. *Id.* at 638-639, 641. As a result, the *Sanders* rule applied only to future cases, and did not require reversal of Sanders's convictions.

We have no doubt that the present case — in which a black defendant is charged with sexual offenses against a white child — is equally likely to inflame racial prejudice as was the interracial rape in *Sanders*. In future trials involving interracial sexual offenses against children, the procedure outlined in *Sanders* must be applied. Like the *Sanders* rule, however, the rule we have established in this opinion affects only future trials. Therefore, the defendant is not entitled to reversal of his convictions on the basis of G. L. c. 234, § 28.

The defendant also claims that he was constitutionally entitled to an individual examination of prospective jurors, but this claim is without support in the decisions of this court and the United States Supreme Court. In some cir-

cumstances, the due process clause of the Fourteenth Amendment may require, as a matter of "essential fairness," that judges accede to defendants' requests for individual voir dire on the subject of race. *Ham* v. *South Carolina*, 409 U.S. 524, 526-527 (1973). This principle, however, applies with constitutional force only when special features of the case make the defendant a "target" of racial bias, *Commonwealth* v. *Ross*, 363 Mass. 665, 672, cert. denied, 414 U.S. 1080 (1973) (with dissents), habeas corpus granted sub nom. *Ross* v. *Ristaino*, 388 F. Supp. 99 (D. Mass.), aff'd, 508 F.2d 754 (1st Cir. 1974), rev'd, *Ristaino* v. *Ross*, 424 U.S. 589 (1976), and "suggest a significant likelihood that racial prejudice [may] infect [his] trial," *Ristaino* v. *Ross*, 424 U.S. 589, 598 (1976). See *Commonwealth* v. *Sanders*, *supra* at 638-639; *Commonwealth* v. *Lumley*, 367 Mass. 213, 214 (1975); *Rosales-Lopez* v. *United States*, 451 U.S. 182, 189-190 (1981). The mere fact that the defendant is black and the victim white does not require individual questioning on the issue of race. *Commonwealth* v. *Lumley*, *supra* at 218. *Rosales-Lopez* v. *United States*, *supra* at 190.

The Supreme Court has indicated that individual voir dire is necessary only when racial issues are "inextricably bound up with the conduct of the trial," as they were in the *Ham* case. *Ristaino* v. *Ross*, *supra* at 597. In *Ham*, the defense rested upon a claim that police had "framed" the defendant because of civil rights activism. *Ham* v. *South Carolina*, 409 U.S. 524, 525 (1973). *Rosales-Lopez* v. *United States*, *supra* at 189. In the present case, racial bias was not an issue at trial, and we do not believe that the inflammatory nature of the crime was sufficient to make the defendant a "special target" of prejudice.

In sum, we find no error in the record before us. The judge properly excluded spectators from the courtroom during the pretrial testimony of Gary, a child victim of an assault and battery committed in the course of sexual offenses against another child, and an eyewitness to the sexual offenses. There were no defects in the judge's instructions on burglary and assault with intent to rape. Finally, the

judge was not required, at the time of this trial, to question prospective jurors individually on racial bias, and his voir dire examination satisfied the requirements of due process.

*Judgments affirmed.*