Commonwealth *vs.* John H. Murphy.

Suffolk. January 5, 1993. - May 10, 1993.

Present: Liacos, C.J., Wilkins, Abrams, Nolan, & Greaney, JJ.

*Bribery. Practice, Criminal,* Amendment of indictment or complaint, Instructions to jury.

At a criminal trial the judge properly on his own motion pursuant to Mass. R. Crim. P. 4 (d) amended the indictment by changing the conjunctive "and" between the three subparts of the indictment to the disjunctive "or" as used in the statute (G. L. c. 268A, § 2 [*a*]), where the amendment was merely of form and the defendant did not demonstrate any prejudice. [164-166]

The judge at a criminal trial properly instructed the jury with respect to reasonable doubt. [166-168]

Indictment found and returned in the Superior Court Department on September 13, 1988.

The case was tried before *Patrick J. King,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Terry Scott Nagel* for the defendant.

*LaDonna J. Hatton,* Assistant Attorney General, for the Commonwealth.

Abrams, J. The defendant, John H. Murphy, appeals from his conviction of bribery, in violation of G. L. c. 268A, § 2 (*a*) (1990 ed.).[1] Murphy alleges that the judge erred in

---

[1] General Laws c. 268A, § 2 (*a*) (1990 ed), reads: "Whoever, directly or indirectly, corruptly gives, offers or promises anything of value to any state, county or municipal employee, or to any person who has been selected to be such an employee, or to any member of the judiciary, or who offers or promises any such employee or any member of the judiciary, or any other person who has been selected to be such an employee or member of the judiciary, to give anything of value to any person or entity, with intent (1) to influence any official act or any act within the official respon-

amending the indictment and in his supplemental instruction to the jury on reasonable doubt. We transferred this case on our own motion. We affirm.

We summarize the facts. Murphy was the owner of two corporations, Eastern General Contractors, Inc. (Eastern General), and Eastern Steel Erectors, Inc. (Eastern Steel). In 1987, Murphy transferred ownership of Eastern Steel to his daughter. Thereafter, Eastern Steel applied to the State Office of Minority & Women Business Assistance (SOMWBA) for certification as not only a minority-owned business but also as a woman-owned business.

The first application was denied because Ms. Murphy had not documented her ownership of Eastern Steel to the satisfaction of SOMWBA. State Representative Raymond Jordan then set up a meeting between Mukiya Baker-Gomez, the executive director of SOMWBA, and Murphy. At this meeting, Murphy gave Baker-Gomez an envelope containing Eastern Steel's second application for certification as a woman-owned business. After the meeting, when Baker-Gomez looked inside the envelope containing the application materials, she found an additional envelope, which contained $940.

Murphy denied any knowledge of the money in the application envelope. He testified that he did have $1,000 with him that he intended to use at an auction. He said that, while traveling to Boston, he had asked his colleague to give him $60 of the money for tolls and traveling expenses. Murphy offered the explanation that the $940 subsequently was placed mistakenly in the wrong envelope. Benjamin Swan,

---

sibility of such employee or member of the judiciary or person who has been selected to be such employee or member of the judiciary, or (2) to influence such an employee or member of the judiciary or person who has been selected to be such an employee or member of the judiciary, to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud on the commonwealth or a state, county or municipal agency, or (3) to induce such an employee or member of the judiciary or person who has been selected to be such an employee or member the judiciary to do or omit to do any act in violation of his lawful duty; . . . ."

the man who accompanied Murphy on the trip, corroborated Murphy's account.

On September 13, 1988, the grand jury returned an indictment against Murphy charging that he, "on or about October 9, 1987, at Boston, in the County of Suffolk, did directly and indirectly, corruptly give, offer, and promise something of value, to wit, money, to an employee of the Massachusetts State Office of Minority & Women Business Assistance, with intent (1.) to influence an official act and act within the official responsibility of such employee, *and*; (2.) to influence such employee to commit and aid in committing, and collude in, and allow, a fraud, and make opportunity for the commission of a fraud on the Commonwealth and a state agency thereof, to wit, the State Office of Minority & Women Business Assistance, *and*; (3.) to induce such employee to do and omit to do any act in violation of his lawful duty" (emphasis supplied).

On the third day of trial, the judge noted that "with regard to the three subparts [of the indictment] . . . the statute uses the word 'or,' so the statute indicates that the defendant could be found in violation of the statute if the Commonwealth proves beyond a reasonable doubt that the defendant committed one or two or three.

"And the way the indictment is drafted, in order to find the defendant guilty, the Commonwealth would have to prove beyond a reasonable doubt that he committed one and two and three." The judge stated that the indictment as written "puts a greater burden on the Commonwealth. . . . Given what I have seen in the file and the bill of particulars, there's no question that the defendant is on notice as to what he is supposed to have done." He also noted that, under rule 4 of the Massachusetts Rules of Criminal Procedure, he could amend the indictment. The judge stated that such an amendment would not prejudice the defendant. He determined that "the use of the conjunctive does not constitute a defect in that the defendant could be found guilty if the Commonwealth proves beyond a reasonable doubt that the defendant committed any one of the three subsections as set

forth in the indictment." Thus, the judge amended the indictment, connecting the subsections with "or." He then allowed Murphy's motion for a required finding of not guilty with respect to the second subsection. The two remaining subsections were submitted to the jury. During deliberations, the jury sent a question to the judge. It read, "We are having problems with the concept of 'reasonable doubt.' Could you provide us with some guidance as to how much 'doubt' is 'reasonable?' Perhaps an example." At the lobby conference, the judge told counsel that he would just repeat the instructions he had given originally. He said: "I wish there was an example I could give without getting reversed, but I'm afraid there are none." The judge then gave a supplemental instruction to the jury, in the midst of which he included an example of the preponderance of the evidence standard. The jury continued deliberating and then convicted Murphy. Murphy alleges that the judge erred in amending the indictment, and in instructing the jury on reasonable doubt.

*The amendment of the indictment.* General Laws c. 268A, § 2 (*a*), is written in the disjunctive; the indictment alleged all of the methods for violating the statute. "Where a crime can be committed in any one of several ways, an indictment properly charges its commission in all those ways, using the conjunction 'and' in joining them." *Commonwealth* v. *Dowe*, 315 Mass. 217, 219-220 (1943). Therefore, the Commonwealth was correct in charging Murphy with having all of the intents proscribed by G. L. c. 268A, § 2 (*a*). In order to prove Murphy guilty, however, the Commonwealth only needed to show that he had one of the prohibited intents. "Where the statute disjunctively prescribes several acts in a series of acts, all of which are alleged in the complaint, then the Commonwealth may prove the violation of the statute by proof of the performance by the defendant of any one of the said acts." *Commonwealth* v. *Martin*, 304 Mass. 320, 322 (1939). See also *Commonwealth* v. *Keevan*, 400 Mass. 557, 565 (1987); *Commonwealth* v. *Valleca*, 358 Mass. 242, 244 (1970); *Commonwealth* v. *Kelley*, 358 Mass. 43, 46 (1970).

To make the indictment illustrate the Commonwealth's burden of proving only one intent in violation of G. L. c. 268A, § 2 (*a*), the judge amended it. Murphy challenges this amendment. Massachusetts Rule of Criminal Procedure 4, 378 Mass. 849 (1979), controls the amendment of indictments.[2] The predecessor to rule 4 (d) was the former G. L. c. 277, § 35A (repealed). Cases interpreting the statute "authorize amendments of form and not of substance, and appl[y] the test whether judgment of conviction or acquittal on the indictment as drawn would be a bar to a new indictment in the form in which it stood after the amendment." *Commonwealth* v. *Binkiewicz*, 342 Mass. 740, 748 (1961), citing *Commonwealth* v. *Snow,* 269 Mass. 598, 609-610 (1930).

If Murphy were convicted of intending to "influence an official act and act within the official responsibility of such employee," the Commonwealth could not prosecute him, in the same circumstances, for intending to influence an employee of the Commonwealth to commit a fraud. See G. L. c. 268A, § 2 (*a*). Therefore, "a judgment on the original indictment would be a bar to the indictment as amended." *Commonwealth* v. *Dellamano*, 17 Mass. App. Ct. 156, 159 (1983). Consequently, the amendment was an amendment of form and not of substance. Cf. *Commonwealth* v. *Cooper*, 264 Mass. 368, 381-382 (1928).

Murphy has not shown that the amendment prejudiced him in his defense, except to say that the burden on the Commonwealth to prove all the intents was higher than that on the Commonwealth after the amendment. The language of the indictment informed Murphy of the charge against him. The Commonwealth properly charged in the conjunctive and was required only to prove Murphy violated the statute by acting with one of the prohibited intents. The amendment

---

[2]Rule 4 (d) of the Massachusetts Rules of Criminal Procedure reads: "Upon his own motion or the written motion of either party, a judge may allow amendment of the form of a complaint or indictment if such amendment would not prejudice the defendant or the Commonwealth."

of the indictment, changing the "and" to "or," was proper under rule 4 (d).

*The instruction to the jury.* The jurors asked for an example of reasonable doubt. In giving the supplemental instruction to the jury, the judge informed the jurors that, "In this area, it [was] not appropriate for the court to provide you with examples." The substance of the supplemental charge the judge gave appears in the margin.[3] Murphy concedes the

---

[3]The judge gave the following supplemental instruction on reasonable doubt: "The Commonwealth has the burden of proving beyond a reasonable doubt that the defendant is guilty of the crime charged. Reasonable doubt has been defined by the highest Court of this state as follows:

"Reasonable doubt is that state of the case when after the entire comparison and consideration of all the evidence the minds of the jurors are left in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.

"The burden of proof is upon the prosecutor. A defendant is presumed to be innocent until he is proven guilty. If after you hear and consider all the evidence there is a reasonable doubt remaining, the defendant is entitled to the benefit of that doubt by a finding of not guilty.

"For the Commonwealth to meet its burden, the evidence must establish the truth of the fact, that is, of the defendant's guilt, to a reasonable and moral certainty, a certainty that convinces and directs the understanding and satisfies the reason and judgment of you the jurors who are bound to act conscientiously upon it.

"When all is said and done, if the Commonwealth has established only that it is more probable than not that the defendant has committed the offense, then that is not sufficient and you must find the defendant not guilty.

"In a civil case, the plaintiff, the person bringing the case to Court has a different burden of proof than in a criminal case.

"In a civil case the person bringing the case, for example, it could be a motor vehicle accident when someone is injured and the person who is injured sues the defendant claiming that the defendant ran a red light and struck the plaintiff's automobile, in that case, a civil case, the burden of proof is different. The burden of proof is by a preponderance of the credible evidence. That simply means that the plaintiff only has to prove that it is more probable than not that the defendant was negligent.

"If you would liken it to a football game, 50-yard line, the plaintiff would only have to move the ball over the 50-yard line in order to meet the plaintiff's burden. But that's in a civil case.

"In a criminal case, the Commonwealth has a much greater burden of proof. The Commonwealth in a criminal case must prove the defendant's guilt beyond a reasonable doubt, not simply by a preponderance of the evidence. So, if all the Commonwealth has done is shown that it is more probable than not that the defendant committed the offense, then that is

judge then gave essentially the same instruction as given previously. The judge did, however, introduce an example of the burden placed on the plaintiff in a civil case. He stated: "If you would liken it to a football game, 50-yard line, the plaintiff would only have to move the ball over the 50-yard line in order to meet the plaintiff's burden. But that's in a civil case." The judge went on to say: "In a criminal case, the Commonwealth has a much greater burden of proof. The Commonwealth in a criminal case must prove the defendant's guilt beyond a reasonable doubt, not simply by a preponderance of the evidence. So, if all the Commonwealth has done is shown that it is more probable than not that the defendant committed the offense, then that is not sufficient for the Commonwealth to meet its burden of proof. The Commonwealth must go beyond that and prove beyond a reasonable doubt that the defendant is guilty." See note 3, *supra*.

"[T]o determine whether a definition of reasonable doubt accurately conveys the meaning of the term, it is necessary to consider the charge as a whole." *Commonwealth* v. *Wood*, 380 Mass. 545, 548 (1980), quoting *Commonwealth* v. *Watkins*, 377 Mass. 385, 388, cert. denied, 442 U.S. 932 (1979). See also *Commonwealth* v. *Beverly*, 389 Mass. 866, 870-871 (1983). The proper language for instructing a jury on the concept of reasonable doubt comes from *Commonwealth* v.

---

not sufficient for the Commonwealth to meet its burden of proof. The Commonwealth must go beyond that and prove beyond a reasonable doubt that the defendant is guilty.

"If after you have considered all the evidence your minds are wavering, unsettled and unsatisfied because of a conscious uncertainty as to the defendant's guilt, you must return a verdict of not guilty.

"If after you consider all the evidence, the evidence reasonably permits either of two conclusions, one of innocence and one of guilt, then you must adopt the conclusion of innocence and find the defendant not guilty.

"Now, reasonable doubt does not mean mere possible doubt because everything relating to human affairs is open to some possible or imaginary doubt. Reasonable doubt is that state of the case when after you have collectively reviewed all of the evidence together, the minds of you the jurors are left in that condition that you cannot say you feel an abiding conviction to a moral certainty of the truth of the charge against the defendant."

*Webster*, 5 Cush. 295, 320 (1850). See *Commonwealth* v. *Gerald*, 356 Mass. 386, 390 (1969); *Commonwealth* v. *Lanigan*, 12 Mass. App. Ct. 913, 915 (1981), cert. denied sub nom. *Maloney, Superintendent, Mass. Correctional Inst.* v. *Lanigan*, 488 U.S. 1007 (1989). The judge used the *Webster* language. The judge explained to the jury that he could not give examples of reasonable doubt. We have indicated that, in instructing on reasonable doubt, "the better course is that all references to examples taken from the jurors' lives should be avoided." *Commonwealth* v. *Ferreira*, 373 Mass. 116, 130 (1977). *Commonwealth* v. *Coleman*, 366 Mass. 705, 712 (1975). The example of the preponderance of the evidence standard was placed within instructions that were consistent with the *Webster* charge. Reading the charge as a whole, we conclude that the jurors could not have been confused as to the standard of proof.

*Judgment affirmed.*