## COMMONWEALTH *vs.* KEVIN HOLMAN.

No. 99-P-1573.

Plymouth. May 9, 2001. - June 6, 2001.

Present: GREENBERG, SMITH, & MASON, JJ.

*Practice, Criminal,* Instructions to jury, Reasonable doubt, Presumptions and burden of proof. *Evidence,* Presumptions and burden of proof, Prior consistent statement. *Indecent Assault and Battery.*

At a criminal trial, the judge's instructions on reasonable doubt were sufficient to convey to the jury the Commonwealth's burden of proof. [788-790]

At the trial of indictments charging indecent assault and battery, the judge's unobjected-to instructions on prior consistent statements, even if incorrect, were favorable to the defendant and did not create a substantial risk of a miscarriage of justice. [790-792]

At a criminal trial, sufficient evidence was introduced to support the defendant's convictions of indecent assault and battery, and there was no indication that the jury were confused on the question of legal justification or excuse for the touchings complained of. [792-793]

INDICTMENTS found and returned in the Superior Court Department on December 8, 1997.

The cases were tried before *Charles F. Barrett,* J.

*Anne E. Gowen,* Committee for Public Counsel Services, for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

MASON, J. After a jury trial in the Superior Court, Kevin Holman was convicted on three counts of indecent assault and battery on a child under fourteen (G. L. c. 265, § 13B), and two counts of assault and battery on a police officer (G. L. c. 265, § 13D). On appeal he claims that (1) the judge's instructions regarding reasonable doubt were flawed; (2) the judge's additional instructions on prior consistent statements unfairly bolstered the victim's trial testimony and undermined the

defense; and (3) there was insufficient evidence to support two of the indecent assault and battery convictions. We affirm the convictions.

*The facts.* The jury could have found the following. Jane (a pseudonym) was born on February 16, 1982, and resided with her mother in Plymouth. Sometime in April, 1994, when Jane was twelve years old, Jane's mother met and began dating Holman. This relationship continued for only about two weeks, but, during this period, Holman visited Jane's home on several different occasions and sometimes spent the night there. He also took Jane and her mother out on trips, including visits to a carnival and a movie attraction at a local furniture store.

During this two-week period, Holman frequently reached out his arms and invited Jane to give him a hug before leaving or upon returning to her home. Jane would respond by jumping up into Holman's arms and putting her legs around Holman's waist. On at least two occasions, Holman reached down in the midst of such a hug and rubbed his hand up and down on Jane's buttocks.

On the evening of April 28, 1994, Jane's mother went out to visit a neighbor and left Jane alone with Holman in the living room of their home for a brief period of time. At this time, Holman forced his hand down the front of Jane's pants and was touching her underwear when Jane pushed his hand away. He then forced his hand down the back of her pants and touched the top of her buttocks under her underwear. At this point, Jane ran out of the house, jumped on her bicycle and rode around the block. When she arrived back at her home, her mother had returned and Jane reported what had happened. Jane's mother told Holman to leave the house and called the police.

Shortly after Holman had left, Plymouth police officer Peter Flynn arrived and, after speaking briefly to Jane and her mother, obtained assistance from another Plymouth police officer, Roy Ahlquist. Flynn and Ahlquist went to the home of a neighbor and found Holman hiding crouched behind a dog house in the neighbor's yard. After identifying himself as a police officer, Flynn instructed Holman to come out from behind the dog house and walk toward him. Holman responded by charging Flynn, causing Flynn to fall over and hit his head on the top of

the dog house. When Ahlquist came to Flynn's assistance, Holman charged him as well and then fled into a wooded area behind the neighbor's house.

*The trial.* Jane, her mother, and officers Ahlquist and Flynn all appeared as witnesses for the Commonwealth and testified to the foregoing facts. The defense did not call any witnesses but introduced as an exhibit a videotape of an interview a representative of the Plymouth County district attorney's office had taken of Jane on August 12, 1997. The videotape was offered purportedly to establish certain inconsistencies with Jane's trial testimony. Although there were some inconsistencies, Jane stated during the interview, consistent with her trial testimony, that Holman had dated her mother for about a week and one-half approximately three years before the interview and, during this period, had patted and stroked her buttocks on two different occasions when he was hugging her, and subsequently had put his hand down the front and back of her pants during the incident she had reported to her mother.

1. *Reasonable doubt instruction.* In instructing the jury on the concept of reasonable doubt, the judge used the "moral certainty" language from *Commonwealth* v. *Webster*, 5 Cush. 295, 310 (1850). He then told the jury that if the Commonwealth had established only that "it is more probable or more likely than not" that the defendant committed one or more of the charged offenses, then the Commonwealth's proof was not sufficient, and "[s]imilarly, if your minds are left wavering, unsettled and unsatisfied because of a conscious uncertainty as to the guilt of the defendant, you must also return a verdict of not guilty."[1]

Holman objected to this instruction, claiming that it

---

[1] In relevant part, the judge first stated that:

"Reasonable doubt is that state of the case, which, after the entire comparison and consideration of all the evidence, the minds of the jurors are left in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

"The operative words are the last few. The minds of the jurors are left in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.

"For the Commonwealth to meet its burden, the evidence must establish the defendant's guilt to a reasonable and moral certainty, a certainty that

improperly substituted the "more likely than not" civil standard for the "strong probability" language of *Webster*[2] and, hence, understated the degree of certainty required to convict. The judge overruled the objection, and Holman raises this issue on appeal.

We think the judge's instructions were sufficient to convey to the jury the Commonwealth's burden of proof. See *Commonwealth* v. *Riley*, 433 Mass. 266, 271-272 (2001). The judge stated and repeated the key concept that the jurors must have "an abiding conviction to a moral certainty of the truth of the charge." See *Commonwealth* v. *Andrews*, 427 Mass. 434, 444 n.9 (1998); *Commonwealth* v. *Silanskas*, 433 Mass. 678, 703-704 (2001). He then referred to the preponderance of the evidence standard only as an example and followed it immediately with the admonition that the jury should return a verdict of not guilty if their minds were left "wavering, unsettled and unsatisfied because of a conscious uncertainty as to the guilt of the defendant." This "conscious uncertainty" language exhorted the jury to acquit if they were aware of any uncertainty, and hence was substantially equivalent to the *Webster* "strong probability" language. See *Commonwealth* v. *Gonzalez*, 426 Mass. 313, 318 (1997) ("by exhorting the jury to acquit if they were aware of any uncertainty, the 'conscious uncertainty' language helped [the defendant] rather than hurting him"); *Commonwealth* v. *Riley*, *supra* at 272.

A similar instruction was approved by the Supreme Judicial

convinces and directs the understanding, and satisfies the reason and judgment of you, the jurors, who are bound to act conscientiously upon it."

The judge then stated that:

"If, after your consideration of all the evidence here, there is reasonable doubt remaining, the accused is entitled to the benefit of that doubt by a finding of not guilty. When all is said and done, if the Commonwealth has established only that it is more probable or more likely than not that the defendant has committed one or more of the offenses charged here, then that is not sufficient and you must find the defendant not guilty."

"Similarly, if your minds are left wavering, unsettled and unsatisfied because of a conscious uncertainty as to the guilt of the defendant, you must also return a verdict of not guilty."

[2]The *Webster* phrase provides, "[f]or it is not sufficient to establish a probability, *though a strong one* arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary." *Commonwealth* v. *Webster*, 5 Cush. at 320.

Court in *Commonwealth* v. *Murphy*, 415 Mass. 161, 166-167 (1993). Although Holman asserts that the judge's entire charge was not reproduced in the *Murphy* opinion, and that the jury may have been instructed in the *Webster* "strong probability" language at some point during the judge's charge in that case, the court did not cite or rely on any such language in approving the supplementary instruction at issue in the case. The court instead reviewed the instruction and concluded that the jurors could not have been confused by the judge's reference to the civil preponderance of the evidence standard since it was placed within instructions that were "consistent with the *Webster* charge." *Commonwealth* v. *Murphy, supra* at 168.

Similarly, in the present case, the judge's reference to the civil preponderance of the evidence standard was placed within instructions that were fully consistent with the *Webster* charge. We therefore conclude that the judge's instructions were adequate to explain the applicable burden of proof. See *Commonwealth* v. *Beverly*, 389 Mass. 866, 872-873 (1983).

We note, however, that the Supreme Judicial Court in several decisions has encouraged trial judges to use the *Webster* definition of proof beyond a reasonable doubt substantially verbatim. See *Commonwealth* v. *Riley*, 433 Mass. at 271 n.9; *Commonwealth* v. *Powell*, 433 Mass. 399, 405 (2001); *Commonwealth* v. *Woods*, 433 Mass. 539, 546-547 (2001); *Commonwealth* v. *Silanskas*, 433 Mass. at 704-705. We again emphasize that "[a]bsent extraordinary circumstances, even experienced judges would be wise to refrain from embellishing the text of an approved instruction, especially where issues as important as reasonable doubt are concerned." See *Commonwealth* v. *Caramanica*, 49 Mass. App. Ct. 376, 378 n.2 (2000), quoting from *Commonwealth* v. *Burke*, 44 Mass. App. Ct. 76, 81 (1997).

2. *Prior consistent statement instruction.* After Holman's trial counsel had finished playing for the jury the videotape of Jane's August, 1997, interview by a representative of the Plymouth County district attorney's office, the judge instructed the jury that a witness's trial testimony may be discredited or impeached by a showing that she had previously made statements that are inconsistent with her trial testimony and, further, that a witness

may be rehabilitated or supported by a showing that she previously made statements that are consistent with her trial testimony. The trial judge further instructed the jury that, to the extent they found Jane's prior statements to be inconsistent or consistent with her trial testimony, they could consider such prior statements in evaluating the credibility of Jane's trial testimony, but not as establishing the truth of any fact contained in the prior statements. The judge reminded the jury of these limiting instructions during his subsequent charge to the jury. On appeal, Holman does not object to the admission of the consistent statements, but only to the judge's instructions.

Holman's trial counsel did not object to these instructions at the time they were given. Indeed, it appears from the trial transcript that Holman's trial counsel requested the instructions.[3] Nevertheless, Holman claims that the instructions were erroneous because prior consistent statements are generally not admissible to bolster the trial testimony of a witness except in certain limited circumstances not present here. See *Commonwealth* v. *Rivera*, 430 Mass. 91, 99-100 (1999).

Holman's argument overlooks the fact that it was Holman himself who introduced the videotape in evidence. Having done so, Holman allowed the consistent statements therein to be given any probative value they possessed. See *Commonwealth* v. *Legacy*, 23 Mass. App. Ct. 622, 631 (1987). To the extent the judge's instructions were incorrect, therefore, they were favorable to Holman. The instructions limited the jury's consideration of the consistent statements contained in the videotape when no such limitation was required.

Moreover, as Holman recognizes, since Holman did not object to the instructions, reversal is required only if the instructions were in error and they gave rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). Holman contends that the instructions did give rise to such a risk because they were given immediately after the videotape was played to the jury and hence unduly focused the

---

[3]The trial transcript indicates that, immediately before giving the instructions, the judge had the following exchange with Holman's trial counsel.

THE JUDGE: "Now, do you want me to tell the jury?"

DEFENSE COUNSEL: "Yes."

jury's attention on the consistent statements contained in the videotape. In fact, the consistent statements contained in the videotape were merely cumulative of Jane's testimony at trial. The instructions, therefore, did not give rise to a substantial risk of a miscarriage of justice even assuming they drew the jury's attention to such consistent statements. Cf. *Commonwealth* v. *Mannos*, 311 Mass. 94, 115 (1942) ("[t]he admission of evidence that is merely cumulative of evidence already given by a witness does not commonly constitute reversible error").

3. *Sufficiency of the evidence.* Two of the indecent assault charges on which Holman was convicted were based on his rubbing of Jane's buttocks during his hugs of Jane. Holman contends that the evidence was insufficient to support these convictions because it equally supported an inference that Holman was simply holding Jane up during his hugs of her, and hence (he argues) his touchings were legally justified or privileged. See *Commonwealth* v. *Lavigne*, 42 Mass. App. Ct. 313, 315 (1997). In support of this argument, Holman points to Jane's testimony that she had jumped up into Holman's arms during the hugs, and placed her legs around his waist. He also points to a question the jury sent out during their deliberations asking why they had been instructed that they could convict Holman of the lesser included offense of assault and battery (rather than indecent assault and battery) when "touching 'Hand on Child's Buttocks' is an indecent assault."[4] According to Holman, the question indicated that the jury believed that they were required to find Holman guilty on the charges of indecent assault and battery if they found that he had touched Jane's buttocks, regardless of whether there was a legal justification for such touching.

In fact, Jane testified that, during Holman's hugs of her, Holman moved his hand down and actually rubbed her buttocks, rather than simply held her up. This testimony was not equally consistent with a justified or privileged touching, as Holman contends. Moreover, the judge instructed the jury in his main charge that, in order to find Holman guilty of indecent assault and battery, they were required to find beyond a reasonable

---

[4]Holman's trial counsel requested such an instruction, and the judge acquiesced in this request.

doubt that Holman had touched Jane without legal justification or excuse and in an indecent manner. There was no indication that the jury were confused on the question of legal justification or excuse, and the evidence warranted their finding. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 648 (1997).

*Judgments affirmed.*