A District Court jury convicted the defendant of two counts of assault and battery.[2] One of these convictions was based on testimony from the victim that the defendant had "pinned" her down. On appeal, the defendant claims that the judge committed reversible error in giving a supplemental instruction that allowed the jury to find the defendant guilty on one of the counts based solely on that act. He also challenges the judge's failure to provide the jury a missing witness instruction with regard to a potential witness who did not testify. We affirm.
Background. The assault and battery charges stemmed from an incident involving the defendant and a woman with whom he was in a dating relationship. According to the victim's testimony, she and the defendant had been "making out" in the back seat of a car when she told him she had to leave, upsetting his expectation that she would go home with him that night. At that point, his demeanor changed and he "got physical." She testified that he first "backhanded her" to the face, then he "started to hit" her, including by punching her in the chest. She also testified that he "held [her] down" with "his arms around [her] arms, had [her] pinned down." Then, according to the victim, he "choked" her by placing his hands around her neck.
The complaint charging the defendant with three counts of assault and battery did not specify what alleged conduct each count was based on. However, the record reflects that the parties reached an agreement on that issue prior to the charge conference. After the judge told the parties at the conference that she needed to know what the "stipulation" was, the prosecutor responded that the defendant "backhanded [the victim] in the face, ... punched her in the chest, and ... held her down and grabbed her by the throat." During his closing argument, the prosecutor referred to the third alleged assault and battery in different ways. At times, he referred only to the choking behavior, while at other times, he added a reference to the defendant's holding the victim down. For example, at one point he stated: "When [the defendant] held her down and choked her, he committed [another] assault and battery against her."
Consistent with the agreement reached by the parties, the judge instructed the jury as follows: "One of the assault and batteries is allegedly the backhand to the face, the second count is the punch to the chest, and the third is held down and grabbed by the throat." The jury were then given verdict slips for each count, with the three verdict slips for the assault and battery counts annotated with the shorthand "face," "chest," and "throat," respectively.
During their deliberations, the jury asked for clarification regarding the third assault and battery count. Specifically, the jury asked: "Is it possible to have a detailed written explanation as to charge [three], assault and battery, throat, especially whether this charge includes holding down [the victim] ... [?]" Following a lengthy discussion outside the jury's presence, the judge responded to the jury's question as follows: "When I instructed you on the count three, assault and battery, I instructed you that the act was holding down and grabbing [the victim] by the throat. I do recognize that the verdict slip just said throat, but it was the act of holding down and grabbing her by the throat."
Subsequently, the jury returned with a second question regarding count three:
"Regarding the assault and battery, charge three, assault and battery/throat seems to include two separate physical acts, holding her throat and holding her down. Does the second part of the charge contend that she was held down by her throat or held down in any manner[?] If the jury believes that one part of the charge occurred but are undecided on the other, what verdict should the jury reach?"
After more extensive discussions outside the jury's presence, the judge first clarified that count three referred to the victim's being held down in any manner, not held down by her throat. Then, with respect to the jury's query about their potentially not being able to reach consensus on both holding the victim's throat and holding her down, the judge responded as follows:
"When the Court read you the instructions, the Court told you that the defendant was charged with three counts of assault and battery, one being a backhand to the face, one being punched in the chest, and the third being held down and grabbed by her throat. If you believe that ... the Commonwealth has proved beyond a reasonable doubt that the defendant held her down and grabbed her by her throat, then you should return a verdict of guilty. If you do not believe that the Commonwealth has proved beyond a reasonable doubt that she was held down and grabbed by her throat, then you should return a verdict of not guilty" (emphases supplied).
Neither the Commonwealth nor the defendant objected.
Nevertheless, the following day, the judge sua sponte announced that she was going to provide the jury with a different answer to their second inquiry, namely that the jury could find the defendant guilty on count three based on either his holding the victim down or grabbing her by the throat. The judge explained that the reason why she was reconsidering was that "obviously, the jury is stuck on this issue, and this, I believe, would be clarification for them, this new instruction." Over the defendant's objection, the judge reinstructed the jury as follows:
"Upon reflection last night, it's obvious to me that you're troubled by the count of assault and battery, third count, which is the Commonwealth alleged that the victim was held down and grabbed by her throat. Today, I'm going to reread that question, I'm going to reopen that question, and I'm going to strike my response that I gave you yesterday. I'm going to reinstruct you with the hope that my new instruction clarifies the question, the response and the question that you asked."
After reinstructing the jury on the elements of assault and battery generally, the judge added:
"Now, the offense of assault and battery may be committed under different theories. In this case, one theory is grabbing her by the throat and the other is holding her down. You may find the defendant guilty only if you all unanimously agree that the Commonwealth has proved beyond a reasonable doubt that the defendant committed the offense in one of those two ways. So you may not find the defendant guilty unless you all agree that the Commonwealth has proved beyond a reasonable doubt that the defendant grabbed the victim by the throat or you all unanimously agree that the Commonwealth has proved beyond a reasonable doubt that the defendant held her down."
The judge also provided the jury with a modified verdict slip for count three that gave the jury three choices: not guilty, guilty based on "grabbing throat," and guilty based on "holding down." The jury found the defendant guilty based on his holding the victim down, and not guilty of grabbing the victim's throat.
Discussion. 1. The supplemental instruction. As set forth above, the jury astutely noticed something that the parties and the judge initially appear to have passed over: that in pressing the third assault and battery count, the Commonwealth actually alleged two acts ("holding down" the victim and "grabbing [her] throat"), either of which could constitute an assault and battery. Hence, the jury were confused about whether they could convict the defendant of this charge only if they found that he committed both alleged acts. The judge's three responses to the jury's inquiries can be summarized as follows. First, in responding to the jury's initial inquiry, she largely repeated the initial instruction, which did not alleviate the jury's confusion. Second, in response to the jury's follow-up inquiry, she gave an instruction that indicated that the Commonwealth had to prove that the defendant committed both acts. Third, she sua sponte withdrew her second response and instructed the jury that the Commonwealth could rely on either alleged act, so long as they were unanimous that the defendant had committed that particular act.
The defendant argues in effect that the Commonwealth agreed that the third alleged assault was based on allegations that he held the victim down and grabbed her by the throat, and that it was bound by that election. It was error, he contends, for the judge to reinstruct the jury that they could convict the defendant based on his either having held the victim down or having grabbed her by the throat, especially by providing such reinstruction sua sponte.
We begin by noting our disagreement with the defendant's premise that by using the conjunction "and" to join the two actions underlying the third assault and battery charge, the Commonwealth had committed to proving both. Indeed, even in the more formal setting of when a defendant is charged through an indictment, "[w]here a crime can be committed in any one of several ways, an indictment properly charges its commission in all those ways, using the conjunction 'and' in joining them." Commonwealth v. Dowe, 315 Mass. 217, 219-220 (1943). The jury themselves found ambiguity in the judge's instructions regarding the third assault and battery count and, accordingly, requested clarification.
We discern no error in the judge's clarifying that the jury could convict the defendant of assault and battery based on either of the alleged acts (a legal proposition that the defendant does not question). See Commonwealth v. Murphy, 415 Mass. 161, 164-166 (1993) (upholding judge's approving an amendment to an indictment so as to allow jurors to consider any one of various different theories, notwithstanding that original indictment connected the theories by the conjunction "and"). Here, as in Murphy, the defendant "has not shown that the [change] prejudiced him in his defense."[3] Id. at 165. In fact, from all that appears in the record, the agreement between the Commonwealth and the defendant as to what evidence underlay each assault and battery charge was not reached until after the evidence closed. Therefore, the defendant cannot show that he relied on any particular interpretation of that agreement in challenging the Commonwealth's evidentiary case or presenting his own. Nor has the defendant persuasively explained how his closing argument would have been different if he had known that the judge was going to reinstruct the jury as she did. Finally, the defendant cannot claim that he was surprised that the Commonwealth was alleging that he held the victim down.[4]
2. Missing witness instruction. The victim's mother did not testify at trial, and the defendant repeatedly requested an instruction allowing the jury to draw an adverse inference from the mother's absence. The judge initially denied that request, and in any event did not ever give a missing witness instruction.[5] The defendant claims that the absence of a missing witness instruction constitutes reversible error.
A missing witness instruction is appropriate only in limited circumstances. Specifically, it is appropriate "[w]here a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case," and the party nevertheless, without explanation, fails to call the person as a witness. Commonwealth v. Anderson, 411 Mass. 279, 280 n.1 (1991) (citation omitted). The victim's mother was neither an eyewitness to the assault, nor someone whose testimony otherwise was "of distinct importance to the case," ibid.; her testimony at most would have gone to tangential points. Therefore, this plainly was not a situation where the giving of such an instruction was warranted.[6] Even if the judge's failure to give an instruction were considered error, and even if we were to deem the defendant's claim of error as having been preserved,[7] we are able to say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Commonwealth v. Misquina, 82 Mass. App. Ct. 204, 207 (2012) (citations omitted). The absence of a missing witness instruction here did not constitute reversible error.[8]
Judgments affirmed.

The jury acquitted the defendant of one count each of assault and battery, intimidation of a witness, and larceny not exceeding $250. Prior to trial, the Commonwealth entered a nolle prosequi on a kidnapping charge.

Another analogous context is where there has been a variance between a bill of particulars and the evidence at trial. "Even when the bill of particulars and the evidence at trial contrast as to an element or theory of the crime charged, relief is warranted only on a showing that the bill of particulars failed to provide the defendant with 'notice to prepare his defense.' " Commonwealth v. Pillai, 445 Mass. 175, 188 (2005), quoting from Commonwealth v. Amirault, 404 Mass. 221, 234 (1989).

While it would have been preferable for the judge to have given her final instruction when the jury first asked for clarification (if not before), we do not view her having corrected herself sua sponte to constitute error. See Commonwealth v. Thayer, 418 Mass. 130, 133 (1994) (finding no error in trial judge's overnight change of heart on whether to give a supplemental instruction requested by the Commonwealth).

The defendant maintains that at one point (after both the charge conference and closing arguments), the judge agreed to give a missing witness instruction. In light of the particular context in which the judge's statement was made and the fact that a key portion of that statement is denoted as "indiscernible," it is not at all clear that the judge was referring to the requested missing witness instruction when she said, "I think I will give it." In fact, although much of the sidebar discussion that took place after the judge gave her instructions is also marked "indiscernible," there are suggestions there that the judge held to her view that a missing witness instruction was not warranted.

Our view would not change even if we were to assume that the judge had agreed, after closing argument, to give such an instruction. See note 4, supra.

It is far from clear that the claim of error was preserved, especially in light of the fact that much of the sidebar discussion that took place after the judge instructed the jury is marked "indiscernible."

In fact, in her closing argument, defense counsel raised the issue of the mother's absence during closing argument, despite never having requested permission from the judge to do so, and despite the judge's initial indication that a missing witness instruction was not warranted. See Commonwealth v. Vasquez, 27 Mass. App. Ct. 655, 658 (1989) ("[I]f counsel plans to argue to the jury that an inference may be drawn against the opposing party for failure to call a witness, the proper practice is first to obtain the permission of the trial judge to do so"). In this manner, the defendant was able to make more of the mother's absence than he was entitled to.